[Civ. No. 27235. First Dist., Div. Four. July 31, 1970.]

ALEX F. ROSAS, Plaintiff and Appellant, v.
JOHN C. MONTGOMERY, as Director, etc., Defendant and Respondent.

**COUNSEL**

Thomas L. Fike and Thomas Schneider for Plaintiff and Appellant.

Thomas C. Lynch, Attorney General, and Asher Rubin, Deputy Attorney General, for Defendant and Respondent.

**OPINION**

**RATTIGAN, J.**—Among several statutory standards of eligibility which a person must meet in order to qualify for public assistance ("ATD") under California's "Aid to the Needy Disabled" program (Welf. & Inst. Code, § 13500 et seq.[1]), he must be disabled by a physical or mental "impairment." We hold on this appeal that an applicant afflicted with alcoholism cannot be disqualified upon the sole basis of an administrative regulation adopted by the Director of the Department of Social Welfare and purporting to exclude alcoholism as a qualifying "impairment."

In June 1967, appellant Alex F. Rosas applied to the Alameda County Welfare Department for ATD benefits. The county denied his application, whereupon he requested and received a hearing by the SDSW pursuant to sections 10950-10957, inclusive. After the hearing the SDSW referee proposed, and the director adopted on May 19, 1968, an administrative decision denying the ATD claim. (See §§ 10958-10959.) After a rehearing

---

[1]Except where otherwise indicated, all statutory references herein are to the Welfare and Institutions Code. The program in question is one of several "public social services" administered by the various counties pursuant to division 9 of the code ("Public Social Services" [commencing with § 10000]) with grants-in-aid funded in part by the federal government, received by the counties from the State of California, and expended subject to regulations adopted by the Director of the Department of Social Welfare. (See, e.g., §§ 10000-10001, 10550-10555, 10600, 10604, 10800, 13502, 13505.) The statutes controlling the program itself appear in chapter 6 ("Aid To The Needy Disabled" [commencing with § 13500]) of part 3 ("Aid and Medical Assistance" [commencing with § 11000]) of division 9. The administrative process relating to it and other "public social services" is set out in part 2 thereof. ("Administration" [commencing with § 10500].) We hereinafter refer to the Department of Social Welfare and its director (respondent on the appeal) as "SDSW" and "director," respectively; and, because they use the term "ATD" to describe both the program and grants made to disabled persons under it (see § 13500), we use it for the same purposes.

(§ 10960), a similar decision was proposed; the director adopted it on October 21, 1968.

Appellant having exhausted his administrative remedy (§§ 10960, 10962) he commenced this action in mandamus, against the director, to have the latter's decision set aside. (§ 10962; Code Civ. Proc., § 1094.5.) After the issuance and return of an alternative writ of mandate, the trial court entered a judgment which (1) included a finding "that there is substantial evidence in the light of the whole record to support the [administrative] findings made by the . . . [SDSW] . . . herein," and (2) discharged the alternative writ and denied the peremptory writ. This appeal followed.

From the administrative proceedings as such, the record on appeal includes only the two SDSW decisions and the documentary evidence received at the hearings. A "Statement of Fact" in the May 19 decision summarizes that evidence in recitals pertaining to appellant's personal background and to "social information" compiled in the Alameda County Welfare Department's investigation of his original ATD application[2]; and in "excerpts from medical and psychological reports submitted to the [SDSW] referee."[3] The substance of the controversy is set forth, and the relevant statutes and administrative regulations are cited, in the decision's continuing language:

### "REASON FOR DECISION

"I. Section 13501 of the Welfare and Institutions Code defines the disabled person for purposes of ATD as one who is both permanently im-

---

[2]The decision reports here that appellant is 50 years old, single, has a limited education, and has been a farm laborer all his life; and that he "reports that he gave up that work in December 1966 because the hard labor involved in farm employment, including stooping, had become too difficult for him due to his physical impairments." The "social information" in the decision includes a statement that ". . . [t]he claimant has a long history of alcohol addiction and the [Alameda County] social worker is convinced that alcoholism would have an adverse effect on his employability." (The decision does not mention further statements by the social worker, shown in the evidence, to the effect that appellant would not benefit from any type of rehabilitation, could not return to work as a farm laborer, and was unable to perform any other work.)

[3]The excerpted reports are by various medical experts who had treated or examined appellant, and from the records of hospitals where he had been treated. Fairly read, the excerpted evidence would support opposing conclusions as to whether he had a physical or mental "impairment" other than alcoholism. As to the latter condition, the same evidence tends to show that he is disabled by episodic dizzy spells and seizures attributable to a long (and current) history of chronic alcoholism. In November 1967, an SDSW medical consultant reported "Major Diagnosis[:] Personality pattern disturbance, inadequate personality *with chronic alcoholism*." (Italics added.)

paired and totally disabled. . . . [A summary of section 13501,[4] subdivisions (b) and (c), follows] . . .

"II. Section 10604 of the same code provides that . . . [A summary thereof[5] follows] . . .

"III. Section 42-205.2 of the Public Social Services Manual[6] provides that persons with the following personality disorders, as defined by the American Psychiatric Association Diagnostic and Statistical Manual, are

---

[4]As pertinent, the full section reads as follows:

"13501. When used in this chapter [i.e., chapter 6 of part 3 of division 9 (commencing with § 13500)], the following words shall have the meanings ascribed to them in this section:

"(a) 'Needy disabled person' means a person who meets the eligibility requirements set forth in this chapter and who is both permanently impaired and totally disabled.

"(b) 'Permanently impaired' means that the individual has a major physical or a major mental impairment, or a combination of both, which is verified by medical findings and appears reasonably certain to continue throughout the lifetime of the individual without substantial improvement.

"(c) 'Totally disabled' means that the impairment substantially precludes the individual from engaging in useful occupations within his competence, such as holding a job . . ."

(It is undisputed that appellant meets the other "eligibility requirements set forth in this chapter," as cited in subdivision (a).)

[5]"10604. In administering any funds appropriated or made available to the department for disbursement through the counties for welfare purposes, the department shall: . . . (b) Establish regulations, not in conflict with the law fixing statewide standards for the administration of all state or federally aided public social service programs, defining and controlling the conditions under which aid may be granted or refused. All regulations established by the department shall be binding upon the boards of supervisors and the county department."

Related statutes provide as follows:

"10553. The director shall: . . . (d) Formulate, adopt, amend or repeal regulations and general policies affecting the purposes, responsibilities, and jurisdiction of the department and which are consistent with law and necessary for the administration of public social services."

"10554. The director is the only person authorized to adopt regulations, orders, or standards of general application to implement, interpret, or make specific the law enforced by the department. . . . In adopting regulations the director shall strive for clarity of language which may be readily understood by those administering public social services or subject to such regulations. . . ."

"10060. 'Regulations' includes but is not limited to standards of eligibility for aid and services, procedures necessary for the proper and efficient administration of public social services, and standards as to conditions which must be met by agencies or individuals subject to licensing or supervision by the department."

[6]This reference is to the first of the relevant administrative regulations pertaining to ATD and adopted by the director pursuant to his statutory rulemaking power. (See fn. 5, ante.) The "Public Social Services Manual" is a compendium of all such regulations maintained by the SDSW pursuant to section 10554. We hereinafter refer to a regulation in it as "PSS § ———."

ineligible [for ATD] in the absence of significant physical disability: . . . [*sic*] Addiction: Alcoholism . . . [*sic*][7]

"IV. Section 42-203.52 of the same manual provides that persons who have two or more impairments, one of which (such as alcoholism) may be excluded by regulation, shall be evaluated on the severity of the impairment which is not excluded.[8]

"V. We find, on a preponderance of the evidence, that the claimant does not qualify for ATD at this time.

---

[7]This regulation actually reads, in pertinent part, as follows:

"PSS § 42-205.2. Nonqualifying Personality Disorders. Persons with the following personality disorders are ineligible [for ATD] in the absence of other major physical impairments or underlying psychiatric illness: (See Diagnostic and Statistical Manual of the American Psychiatric Association, Second Edition, for definition.)

| "Antisocial Personality | 301.7 |
| Sexual Deviations | 302 |
| Alcoholism | 303 |
| Drug Dependence | 304" |

The number indicated for each "personality disorder" is a section reference to the "Manual" cited. According to an excerpt from the manual reproduced in respondent's brief, its full title is "Diagnostic and Statistical Manual of Mental Disorders." Section 303 appears under the heading "V. Personality Disorders and Certain Other Non-Psychotic Mental Disorders." The section contains this language:

"303. Alcoholism. This category is for patients whose alcohol intake is great enough to damage their physical health, or their personal or social functioning, or when it has become a prerequisite to normal functioning. If the alcoholism is due to another mental disorder, both diagnoses should be made. The following types of alcoholism are recognized: 303.0. Episodic excessive drinking . . . 303.1. Habitual excessive drinking . . . 303.2. Alcohol addiction . . ."

[8]We quote this regulation (italicizing it) within its full context, as follows:

"PSS § 42-203. DEFINITION OF PERMANENT AND TOTAL DISABILITY.

". . . . . . . . . . . . .

"PSS § 42-203.4. Nonqualifying Criteria. Two criteria, as separate entities, are not considered in the determination of disability.

"PSS § 42-203.41. Unemployability for other than medical reasons is not a qualifying criterion.

"PSS § 42-203.42. Certain existing personality disorders without other disability factors are not a basis for eligibility [for ATD] (see Section 42-205, Personality . . . Disorders).

"PSS § 42-203.5. Two or More Impairments. A person may have two or more impairments neither of which alone may be severe enough to qualify him [for ATD] or one of which may be excluded by regulation. The degree of disability of such person shall be evaluated in accordance with .51 or .52 below.

"PSS § 42-203.51. Impairments Not Excluded by Regulation. The impairments shall be evaluated in light of their combined effect upon the person's ability to engage in a useful occupation.

"*PSS § 42-203.52. One Impairment Excluded by Regulations. Persons who have two or more impairments, one of which (such as alcoholism) may be excluded by regulation, shall be evaluated on the severity of the impairment which is not excluded.*"

"VI. Our conclusion in this respect is based upon the fact that, although the claimant reports periodic dizzy spells and blackouts, there is no objective neurological evidence of disease of the central or peripheral nervous system nor is there indication of any severe mental impairment. Recent EEG is within normal limits.

"VII. The claimant has a serious problem of alcoholism which undoubtedly affects his employability. However, this impairment, unless associated with one or more other major, verifiable impairments, is not qualifying pursuant to the specific regulations cited above, regulations which have been formulated under the statutory authority of the State Department of Social Welfare to fix statewide standards for the administration of ATD.

"ORDER

"The claim is denied."[9]

In similar format, and as pertinent, the SDSW decision adopted on October 21, 1968, states as follows:

"SUMMARY. Where the claimant's principal disability is alcohol addiction and where his other disabilities are not medically established as totally and permanently disabling, the claimant is not eligible to receive Aid to the Disabled (ATD) under Welfare and Institutions Code (W&IC) [sections] 10604 and 13501, and Public Social Services (PSS) Manual Sections 42-203.52 and 42-205.2.

". . . . . . . . . . . . .

"STATEMENT OF FACT

"I. On May 19, 1968, . . . [the director] . . . adopted an order denying the claimant's appeal from a determination that he was not eligible for ATD on the basis that the major impairment was alcoholism, a nonqualifying personality disorder.

". . . . . . . . . . . . .

"V. The issues are whether: 1. The claimant is severely enough dis-

---

[9]In another paragraph, appearing in the May decision but not in the sequence just quoted, the decision is summarized in this language:
"SUMMARY. Where, on a preponderance of the medical and social evidence, it is established that the claimant's physical and mental impairments, even in combination (but excluding the problem of alcohol addiction which is excluded by regulation) are not of such severity as to prevent him from engaging in employment within his competence, he is not eligible to receive Aid to the Disabled (ATD) at this time (Welfare and Institutions Code Sections 10604 and 13501 and Public Social Services Manual Sections 42-203.52 and 42-205.2)."

abled to qualify for ATD, notwithstanding any diagnosis of alcohol addiction. 2. PSS Manual Section 42-205.2 [,] which excludes alcohol addiction as a qualifying personality disorder [,] should not be allowed to stand.

"  .    .    .    .    .    .    .    .    .    .    .    .    .    .    .

"REASON FOR DECISION

"I.  W&IC Section 13501 defines the disabled person for purposes of ATD as one both permanently impaired and totally disabled, with an inpairment or combination of impairments [,] verified by medical findings [,] which may be [sic] reasonably certain to continue throughout the lifetime of the individual without substantial improvement.

"II.  W&IC Section 10604 provides in part: '. . . All regulations established by the [State Department of Social Welfare] [sic] shall be binding upon the Board of Supervisors and the county department.'

"III.  PSS Section 42-205.2 provides that persons with the following personality disorders as defined by the American Psychiatric Association Diagnostic and Statistical Manual are ineligible in the absence of significant physical disability: '. . . [sic] Addiction: Alcoholism . . . [sic]'

"  .    .    .    .    .    .    .    .    .    .    .    .    .    .    .

"V.  Information presented at the rehearing established no new fact, social evaluation, or medical evaluation, as to the client's [sic: claimant's ?] degree of disability. Therefore, the original finding of ineligibility as to impairments not excluded by the regulation is confirmed.

"VI..  On the basis of evidence presented in this case we affirm the denial of the claim as reflected in the order of the Director, adopted May 19, 1968. We find this appropriate in that that order upheld the . . . [Alameda County] . . . denial of the claimant's application for ATD upon the determination that the claimant's impairments (other than alcohol addiction which is excluded by regulation) are not severe enough to qualify him for ATD. [Par.] Further, we find that exclusion, by regulation, of alcohol addiction as a qualifying impairment is not inconsistent with constitutional or statutory law and is within the legislatively delegated authority of the department [i.e., the SDSW].

"VII.  Legal arguments presented in behalf of the claimant by his counsel have been carefully considered. Notwithstanding, it is determined under proper authority that the regulation questioned ([PSS §] 42-205.2) is a valid implementation of the statute.

"ORDER

"The claim is denied."

In both decisions the director found, from medical and other evidence, (1) that appellant "has a serious problem of alcoholism which undoubtedly affects his employability" and (2) that he has no other "impairment" within the meaning of section 13501, subdivision (b). To these findings, as far as they go, the trial court applied the correct standard of judicial review, for purposes of this administrative mandamus proceeding, by determining that the findings were supported by "substantial evidence in the light of the whole record." (Code Civ. Proc., § 1094.5, subd. (c); *Bertch* v. *Social Welfare Dept.* (1955) 45 Cal.2d 524, 529 [289 P.2d 485]; *County of Contra Costa* v. *Social Welfare Board* (1962) 199 Cal. App.2d 468, 473 [18 Cal.Rptr. 573]. See Cal. Administration Mandamus (Cont.Ed.Bar 1966) §§ 5.68, subd. (4), p. 79, 5.72, subd. (a), p. 84, 5.75, pp. 89 et seq.) Such evidence appearing (see fn. 3, *ante*), no "abuse of discretion" by the director was established on the basis that the findings lacked evidentiary support. (Code Civ. Proc., § 1094.5, subds. (b), (c).) Accordingly, there was no occasion for the trial court to disturb them (Cal. Administrative Mandamus, *op. cit. supra*, § 5.75, pp. 89 et seq.), nor is there any occasion for our disturbing them on the appeal. (*Id.*, § 15.26, p. 281.)

As both decisions indicate, however, the basis for denying the ATD claim was that the director's administrative regulation (PSS § 42-205.2 [fn. 7, *ante*]) flatly established that a person with the "personality disorder" of alcoholism (as first found here) was ineligible for ATD "in the absence of other major physical impairments or underlying psychiatric illness" (as was also found here). Appellant having challenged the regulation throughout the administrative proceeding (as appears, e.g., in paragraph V of the October 21 decision, quoted *supra*), he was in the position of attacking it as a quasi-legislative, rather than adjudicatory, action of the director. (See *Wulzen* v. *Board of Supervisors* (1894) 101 Cal. 15, 24 [35 P. 353]; Cal. Administrative Mandamus, *op. cit. supra*, § 2.8, pp. 17-18.) Appellant pursued his attack in this administrative proceeding in the superior court, which he was entitled to do. (Cal. Administrative Mandamus, *op. cit. supra*, § 2.9, p. 19.) The question of an administrative "abuse of discretion," requiring judicial relief, therefore turned upon whether the director, exercising statutory rulemaking power, had "not proceeded in the manner required by law." (Code Civ. Proc., § 1094.5, subd. (b); Cal. Administrative Mandamus, *op. cit. supra*, §§ 2.9, p. 19, 5.13, pp. 42-43.)

Under these circumstances, the trial court's resort to the "substantial

evidence" test failed to reach the validity of the regulation's application here, which is a question of law rather than fact. Answering it on the appeal, we hold the regulation invalid as applied. It follows from this, as will appear, that the director's "decision is not supported by the findings" (Code Civ. Proc., § 1094.5, subd. (b)) mentioned above. As both conclusions establish an "abuse of discretion" by the director (*id.*), we reverse the judgment.

Appellant's contention that alcoholism cannot be classified by regulation as a nonqualifying "impairment" rests upon the premise—which he has advanced throughout the administrative proceedings, in the trial court, and on the appeal—that the condition (alcoholism) is a "disease." Despite substantial professional authority supporting this assertion, and because of limitations upon judicial knowledge of the subject, the courts will not accept the assertion in the absence of record evidence supporting it. (*Powell* v. *Texas* (1968) 392 U.S. 514, 519-526 [20 L.Ed.2d 1254, 1260-1264, 88 S.Ct. 2145]; *In re Spinks* (1967) 253 Cal.App.2d 748, 752-753 [61 Cal.Rptr. 743] [text at fn. 2]. Cf. *Easter* v. *District of Columbia* (1966) 361 F.2d 50, 54-55 [124 App.D.C. 33] and appendices [pp. 56-60]; *Driver* v. *Hinnant* (4th Cir. 1966) 356 F.2d 761, 763-764; *Lewis* v. *Celebrezze* (4th Cir. 1966) 359 F.2d 398, 399-400.) Because no evidence supports it in the present record, we reject appellant's premise. This conclusion, however, does not provide an answer to the essential question (i.e., whether the ATD law permits the peremptory disqualification of appellant under the regulation) because the definitive statute (§ 13501, subd. (b)) does not require a "disease": it requires an "impairment" of specified dimensions and consequences. We find the answer in the limitations imposed upon the director's rulemaking power by the purpose of the ATD law and by the meaning of the term "impairment" as used therein by the Legislature; and in relevant federal court decisions.

### The Director's Rulemaking Power

The existence of the director's rulemaking power is not open to question: it is explicitly granted in sections 10553 (subd. (d)) and 10604 (subd. (b)), and limited to him by section 10554 (see fn. 5, *ante*). The Legislature, however, did not explicitly authorize him to define an "impairment" for ATD purposes or to exclude alcoholism or any other "personality disorder" as a qualifying "impairment." His exercise of the rulemaking power in this instance is therefore subject to the express limitations that his regulations be "consistent with law" (§ 10553, subd. (d)) and "not in conflict with the law" (§ 10604, subd. (b)). Moreover, when a state agency is authorized by law "to adopt regulations to implement,

interpret, make specific or otherwise carry out the provisions of the statute [see § 10604, subd. (b)], no regulation adopted is valid or effective unless consistent and not in conflict with the statute and reasonably necessary to effectuate the purpose of the statute." (Gov. Code, § 11374; *Morris* v. *Williams* (1967) 67 Cal.2d 733, 748 [63 Cal.Rptr. 689, 433 P.2d 697].)

■ "While the construction of a statute by officials charged with its administration, including their interpretation of the authority invested in them to implement and carry out its provisions, is entitled to great weight, nevertheless 'Whatever the force of administrative construction . . . final responsibility for the interpretation of the law rests with the courts.' [Citation.]  ■  Administrative regulations that alter or amend the statute or enlarge or impair its scope are void and courts not only may, but it is their obligation to strike down such regulations. [Citations.]" (*Morris* v. *Williams, supra.*)

### The Purpose of the ATD Law

We are thus remitted, first, to the "purpose" (Gov. Code, § 11374) of the ATD law. The Legislature has stated that the purpose of the law itself (ch. 6 of pt. 3 of div. 9 [commencing with § 13500]) is "to provide persons whose dependency results from disability defined by Section 13501 with assistance and services which will encourage them to make greater efforts to achieve self-care and self-support and to enlarge their opportunities for independence." (§ 13500.) Although the term "disability" is not literally "defined by Section 13501" (see fn. 4, *ante*), this reference thereto unmistakably aims the remedial effect of ATD at a person who is precluded from "engaging in useful occupations within his competence, such as holding a job . . . ." (§ 13501, subd. (c).)

ATD, moreover, is one of several "public social services." (§ 10000 et seq.) The stated legislative purpose of all such services is ". . . to provide for protection, care, and assistance to the people of the state in need thereof, and to promote the welfare and happiness of all of the people of the state by providing appropriate aid and services to all of its needy and distressed." (§ 10000.) Declaring this purpose (*id.*), the Legislature also expressed its specific intent that ". . . aid shall be so administered and services so provided as to encourage self-respect, self-reliance, and the desire to be a good citizen, useful to society." (*Id.*) The purposes of all "public social services" which are supported by state grants-in-aid to counties (and which include ATD) are further stated by the Legislature as follows: "(a) To provide on behalf of the general public, and within the limits of public resources, reasonable support and maintenance for needy and dependent . . . persons. (b) To provide timely and appropriate

services to assist individuals develop or use [*sic*] whatever capacity they can maintain or achieve for self-care or self-support. . . ." (§ 10001.)

While we recognize the possibility that the Legislature used the just-quoted language to state nobility of purpose rather than specificity thereof, the stated purpose of the ATD law and program is reasonably clear. Our construction of the applicable statutes, moreover, is subject to the Legislature's express admonition that "[t]he provisions of law relating to a public assistance program shall be liberally construed *to effect the stated objects and purposes of the program.*" (§ 11000; italics added.)[10] We also recognize, therefore, that many alcoholics are "disabled" in the literal sense, are precluded from "holding a job" (§ 13501, subd. (c)), should be encouraged "to make greater efforts to achieve self-care and self-support and to enlarge their opportunities for independence," (§ 13500), are "distressed" (§ 10000), should be encouraged in "self-respect, self-reliance, and the desire to be . . . good citizen[s], useful to society" (*id.*), are "dependent" (§ 10001, subd. (a)), and need assistance in developing their capacity "for self-care or self-support." (*Id.*, subd. (b).) With respect to persons afflicted with alcoholism, these are matters of both common and judicial knowledge. (See *Powell* v. *Texas, supra,* 392 U.S. 514 at pp. 521-528 [20 L.Ed.2d 1254 at pp. 1261-1265] and authorities cited (fns. 2-21, inclusive[11]). See also *Easter* v. *District of Columbia, supra,* 361 F.2d 50 at

---

[10]In the ATD law as originally enacted (in 1957) the Legislature, to the contrary, provided for strict construction of "definitions of terms . . . in . . . [then § 4000, now § 13501] . . ." (Stats. 1957, ch. 2411, § 1, p. 4157.) The 1961 Legislature deleted this provision (Stats. 1961, ch. 1416, § 1, p. 3218) and enacted (as § 426) the substance of present section 11,000 calling for liberal construction of all "provisions of law relating to a public assistance program." (Stats. 1961, ch. 1883, § 1, p. 3982.) In the 1957 law, moreover, the Legislature provided in then section 4000 that a "permanently impaired and totally disabled person shall not be qualified . . . (for ATD) . . . unless he requires constant and continuous care. A person needing constant and continuous care is one who is bedfast, chairbound, or in need of physical assistance without which the daily regimen could not continue or whose mental or physical impairment makes continuous supervision essential." (Stats. 1957, ch. 2411, § 1, p. 4157. See tenBroek, *Welfare in the 1957 Legislature* (1958) 46 Cal.L.Rev. 331, 334.) The Legislature relaxed this language in 1961 (Stats. 1961, ch. 1416, § 1, p. 3218) and deleted it entirely, in 1963, when it enacted (still as § 4000) the substance of present section 13501. (Stats. 1963, ch. 510, § 19, p. 1383.) Former section 4000 was repealed, and present section 13501 was enacted in its place, in 1965. (Stats. 1965, ch. 1784, §§ 4, p. 3978, 5, p. 4050.) We perceive in this history (1) a calculated legislative progression from strict to liberal construction of the ATD law, and (2) the progressive adoption of ATD definitions more likely to include alcoholics, who are ordinarily not "bedfast," or "chairbound," or in need of the degree of "physical assistance" prescribed in the original law.

[11]See, e.g., E. Jellinek, The Disease Concept of Alcoholism (1960) pp. 19-25 (incidence of alcoholism among the poor); M. Block, Alcoholism—Its Facets and Phases (1962) pp. 74-86 (problems and needs of alcoholics). See also Understanding Alcoholism (Christopher D. Smithers Foundation 1968) pp. 36-59; D. Pittman (Editor), Alcoholism (1967) pp. 142-156; T. Plaut, Alcohol Problems (1967) pp. 18-19, 86-97.

pp. 56-60 and authorities cited.) Accordingly, it does not appear that the regulation categorically excluding them from the ATD program comports with the program's stated purpose.

### The Language Of The ATD Law

■ We turn to the more specific question of whether the meaning of the term "impairment," as used by the Legislature in defining a qualifying ATD factor (§ 13501, subd. (b)), permits the director, by regulation, to exclude alcoholism therefrom. ■ "[T]he better and more modern rule of construction is to construe a legislative enactment in accordance with the ordinary meaning of the language used and to assume that the Legislature knew what it was saying and meant what it said." (*Pacific Gas & Elec. Co.* v. *Shasta Dam etc. Dist.* (1955) 135 Cal.App.2d 463, 468 [287 P.2d 841].) A contemporary definition offers these relevant definitions: "Impairment: . . . the state of being impaired: injury . . .: deterioration . . ."; "impair: . . . to make worse; diminish in quantity, value, excellence, or strength: do harm to: damage, lessen . . ." (Webster's Third New Internat. Dict. (1967) p. 1131.) ■ It appears from the sources previously cited (see text at fn. 10, *ante*) that alcoholism is an "impairment" in the literal sense. Moreover, the Legislature itself has consistently acknowledged, in statutory language, that alcoholism "impair[s]" (§ 19800), and that a person afflicted with the chronic condition thereof is "impaired" (§§ 5001, subd. (a), 5002) and has an "impairment." (§§ 5230, 5276, 5350, 5352, 5361.)[12] Under these circumstances, we find no legislative intent to exclude alcoholism, or to permit its exclusion, from definition as an "impairment" within the meaning of the ADT law. (§ 13501, subd. (b).)

### The Federal Decisions

The United States Court of Appeals for the Eighth Circuit has resolved a similar question in favor of a personality-disordered applicant (a sex deviant) for disability insurance benefits under the Social Security Act, and against the exclusionary effect of a comparable administrative regula-

---

[12]Section 19800, which appears in the McAteer Alcoholism Act (see § 19813), states that "Alcoholism and problems associated with misuse of alcoholic beverages *impair* the life and health of a large segment of the population of California . . ." (Italics added.) In its original form, the McAteer Alcoholism Act (including present § 19800) was enacted by the same (1965) Legislature which enacted the current ATD law. (See, respectively, Stats. 1965, ch. 1431, § 2, p. 3360 et seq.; Stats. 1965, ch. 1784, § 5, p. 3978 et seq.) The other statutes, cited here for their contents as stated in the text, appear in the Lanterman-Petris-Short Act, which has to do with "community mental health services" to alcoholics and others, and which was enacted in 1967. (Stats. 1967, ch. 1667, § 36, p. 4074 et seq.)

tion, upon the ground that the applicant had shown himself to be in fact disabled within the meaning of the act. (*Marion* v. *Gardner* (8th Cir. 1966) 359 F.2d 175, 179-181.) The regulation in *Marion* stated that "'[p]ersonality disorders are characterized by patterns of socially unacceptable behavior, such as chronic alcoholism, sexual deviation and drug addiction. In the absence of an associated severe psychoneurosis or psychosis, a personality disorder does not in itself result in . . . [disability within the meaning of the Social Security Act] . . .'" (*Id.*, at p. 179 [fn. 2].) Speaking to the regulation, the *Marion* court said "We find nothing . . . [in the federal law] . . . which is otherwise restrictive. We find nothing which separates the psychoses and the psychoneuroses from other types of impairment. And we would be reluctant, indeed, to pivot a conclusion upon a currently accepted—but subject to change—definition of a particular psychiatric term or phrase. See the startling and almost frightening example of the danger of this kind of legal indulgence deplored in Judge Burger's concurring opinion in *Blocker* v. *United States,* 110 U.S. App. D.C. 41, 288 F.2d 853, 857, 860-861 (1961) . . . [Par.] We cannot escape the conviction that this applicant, despite the apparent absence of any impairment other than his [sexually] deviant tendencies, meets the disability requirement of the [federal] statute." (*Id.*, at p. 181.) The court further stated (*id.*) that "We need not go so far as to say that the . . . regulation . . . is invalid in all respects. When it is inconsistent with the statute it must, of course, give way. We regard it as a general guide and not as establishing a complete barrier to a sexual deviant's qualification under the statute. The error in the present case, we feel, is in the [federal] hearing examiner's and the district court's too rigid interpretation of the regulation."

The *Marion* decision has been followed by a federal district court (*Underwood* v. *Gardner* (W.D.Mo. 1967) 267 F.Supp. 802, 813-816), and another federal appellate court has stated in a dictum that chronic alcoholism, as such, should not disqualify an applicant for federal disability insurance benefits under the Social Security Act if the condition in fact produces "disability" as defined therein. (*Lewis* v. *Celebrezze, supra,* 359 F.2d 398 at pp. 399-400.)[13]

---

[13]In other federal decisions cited on the present appeal, alcoholism is uniformly disparaged as a basis of eligibility for such benefits. None of these decisions is definitive here, however, and each is distinguishable from *Marion* v. *Gardner,* because in each the claimant's evidence failed to show that he was in fact disabled within the meaning of the Social Security Act. (*Hirst* v. *Gardner* (7th Cir. 1966) 365 F.2d 125, 126; *Brown* v. *Celebrezze* (4th Cir. 1965) 347 F.2d 227, 228; *Brasher* v. *Celebrezze* (8th Cir. 1965) 340 F.2d 413, 418; *Echols* v. *Gardner* (S.D.Tex. 1967) 276 F.Supp. 499, 502; *Ferrell* v. *Gardner* (S.D.W.Va. 1966) 260 F.Supp. 996, 1001; *Bowen* v. *Celebrezze* (W.D.La. 1965) 250 F.Supp. 44, 46; *Mays* v. *Ribicoff* (S.D.W.Va. 1962) 206 F.Supp. 170, 171.)

■ To qualify the afflicted person for ATD, his "impairment" must be "major" and either "physical" or "mental" under the statute, and both permanent and "totally" disabling within its meaning. (§ 13501.) Appellant was not disqualified because alcoholism cannot, or because his alcoholism did not, fail in any of these respects. Whether it can be any or none of these things presented questions to be resolved by evidence, not by regulation or—because of the courts' limited knowledge of the subject (*Powell* v. *Texas, supra,* 392 U.S. 514, 519-526 [20 L.Ed.2d 1254, 1260-1264]) by judicial decision. None of these questions was reached here because the regulation (PSS § 42-205.2) operated to preclude consideration of any of them once appellant had been determined to be an alcoholic in fact.

For the reasons previously indicated, we hold that the regulation, so applied, is invalid because (1) it conflicts with the "purpose of the [ATD] statute" (Gov. Code, § 11374; *Morris* v. *Williams, supra,* 67 Cal.2d 733 at p. 748); and because (2), purporting to preclude alcoholism, by definition, as a qualifying ATD "impairment," in the absence of perceptible legislative intent that this be done or permitted, the regulation operates to "alter or amend the statute or . . . impair its scope . . ." (*Morris* v. *Williams, supra.*) "When . . . [an administrative regulation] . . . is inconsistent with the statute it must, of course, give way." (*Marion* v. *Gardner, supra,* 359 F.2d 175 at p. 181.) As in *Marion* (*id.*) and because the regulation might be valuable as a "general guide," we do not invalidate it in all respects; we hold only that it cannot be invoked, as occurred here, to establish a "complete barrier" to appellant's "qualification under the statute." (*Id.*)

■ This conclusion produces the two results previously stated: (1) The director, applying the regulation with the effect just stated, "has not proceeded in the manner required by law." (Code Civ. Proc., § 1094.5, subd. (b).) (2) The director's threshold determination, that appellant was ineligible for ATD because he was an alcoholic, resulted in the omission of findings concerning the permanence of his condition (§ 13501, subd. (b)) and whether he was "totally disabled" (*id.,* subd. (c)) both of which findings are reasonably required by the statute: in consequence, the "decision is not supported by the findings" actually made. (Code Civ. Proc., § 1094.5, subd. (b).) Each of the two results constitutes an "abuse of discretion" (*id.;* Cal. Administrative Mandamus, *op. cit. supra,* §§ 2.9, p. 19, 5.43-5.44, pp. 60-61, 5.49, p. 63) requiring reversal of the trial court; the second requires the remand hereinafter ordered. (Code Civ. Proc., § 1094.5, subd. (e).) When the matter is under reconsideration by the SDSW, appellant will bear the burden of showing that his alcoholism (if its existence is still medically established) is "major" and "physical" or "mental," and is both permanent and "totally" disabling. (§ 13501.)

The judgment is reversed. The cause is remanded to the trial court with

directions to issue the peremptory writ of mandate as prayed, to remand the cause to the State Department of Social Welfare for reconsideration thereof consistent with the views herein expressed, and to order said department (through the director) "to take such further action as is specially enjoined upon it by law." (Code Civ. Proc., § 1094.5, subd. (e).)

Christian, J., concurred.

**DEVINE, P. J.**—I dissent. There is no doubt that the applicant suffers an "impairment" of his ability to engage in useful occupations within his competence by reason of his alcoholism. But I do not believe that his impairment, as shown by the evidence, is a major physical or a major mental impairment, or a combination of both, within the meaning of Welfare and Institutions Code, section 13501, subdivision (b). Nor do I believe that the regulation of the Department of Social Welfare (section 42-205.2 of the Public Social Services Manual) is invalid in excluding alcoholism as a qualification for aid to the needy disabled, in the absence of other major physical impairments or underlying psychiatric illness (both of which conditions have been impliedly, if not expressly, excluded in the Rosas case by the decision). My reasons are:

1. There are other impairments than those which are physical or mental, or a combination of both. Others may be volitional or social. For example, a bank clerk having no other competence than that of his usual employment, who embezzled money from a bank, no doubt would be impaired in his ability to gain employment; but he would not fall within the meaning of the statute. The alcoholic is not of this class; but my point is that he is not necessarily physically or mentally disabled just because he truly does have an "impairment." He is of a special class. The alcoholic may arrive at a state of major physical impairment or major mental impairment, or a combination of both, but unless he has arrived there he belongs in a different category. Even though his life pattern precludes him from work and even though, according to present estimation, this may be permanent, nevertheless his condition does not fall within the terms of the statute.

2. The fact that the Legislature used the terms "a major physical or a major mental impairment, or a combination of both" constitutes an implication that the Legislature recognized that there may be other impairments which it did not care to regard as causing disability within the meaning of this statute.

3. The rule that the interpretation of a statute by the officer who is charged with its administration is entitled to great weight has been recog-

nized not only by the California cases (*Ralphs Grocery Co.* v. *Reimel,* 69 Cal.2d 172, 176 [70 Cal.Rptr. 407, 444 P.2d 79]; *Whitcomb Hotel, Inc.* v. *California Emp. Com.,* 24 Cal.2d 753, 756 [151 P.2d 233, 155 A.L.R. 405]; *Morris* v. *Williams,* 67 Cal.2d 733, 748 [63 Cal.Rptr. 689, 433 P.2d 697]), but also by the case of *Brasher* v. *Celebrezze,* 340 F.2d 413, 418, which sustained a federal regulation which is similar to section 42-205.2 of the California Public Social Services Manual.

4. In the interpretation of a statute the consequences of a judicial construction are to be considered. (*Bush* v. *Bright,* 264 Cal.App.2d 788, 792 [71 Cal.Rptr. 123].) To provide alcoholics who are not physically or mentally unable to work with a settled source of income will not only burden taxpayers with a heavy encumbrance, which the Legislature has not clearly intended the taxpayers to bear, but also give assurance to persons inclined to inebriety that if they continue and enlarge their habit to the point where it constitutes an "alcoholic impairment," they will be taken care of by the public.

Furthermore, it is to be considered that a good deal of the money supplied by the taxpayers probably would be used for the purchase of more liquor by applicants already disadvantaged by excess in its use. To say, as the applicant herein does, that the statute provides for tutelage in certain cases is not an adequate answer. In the first place, it overlooks the well-known ingenuity of the alcoholic in obtaining a supply of liquor despite heavy odds against him. And in the second place, it omits to consider that even if the particular funds which are supplied by the state are not used for purchases of liquor, the applicant will be more free to employ whatever other resources he may acquire for that purpose.

By this, I do not mean that the court should undertake an original consideration of policy matters. The Legislature may, indeed, decide that the matters discussed in the preceding paragraphs are of lesser weight than opposing considerations. But since the majority opinion depends in part upon the Legislature's stated purpose of the law as one to encourage the receiver of the benefits to make greater efforts for self-care and self-support and to enlarge his opportunities for independence, I observe that it is probable that the Legislature, in enacting provisions for the benefit of the needy disabled, did not intend to include a person who suffers from alcoholism, uncoupled with the impairments described specifically in the statute, as one likely to strive for self-support and independence. To put an alcoholic on a dole may or may not help him to make greater efforts for self-support. But the proposition that it will is doubtful enough in my view to forbid our enlarging of the statute, as I believe the majority opinion would do.

5. If the Legislature does decide that the alcoholic should come within the statute, even though he has no major physical or mental impairment, the Legislature has it within its power to say so in no uncertain terms and to do so very quickly. Of course, the Legislature could make the change the other way, too, but perhaps only after a large amount of money would have been spent, a disruption in the practice of the department had been caused, and the reliance of thousands of applicants on their newfound bounty would have been destroyed.

6. I find the case of *Marion* v. *Gardner,* 359 F.2d 175, to be quite distinguishable. In that case, the excluding regulation (20 C.F.R., § 404.1519(c) (2) (iii), 42 U.S.C.A. Appendix p. 494) read as follows: "Personality disorders. Personality disorders are characterized by patterns of socially unacceptable behavior, such as chronic alcoholism, sexual deviation and drug addiction. In the absence of an associated severe psychoneurosis or psychosis, a personality disorder does not in itself result in inability to engage in substantial gainful activity. A person confined in a correctional institution because of antisocial behavior will not be considered disabled unless he has other severe impairments which would preclude any substantial gainful activity if he had not been so confined." The court expressly declined to invalidate this regulation (p. 181). It held that the error was the hearing examiner's and the district court's too rigid interpretation of the regulation. It held that it could not be persuasively argued that the applicant did not suffer from physical or mental impairment when he had long been confined under a state statute which treated him as insane and which placed him in a maximum security hospital for an indefinite period after he had displayed his tendencies to sexual deviation even in hospital environment (p. 181).

7. It is not necessary or proper for us to make a moral judgment on the applicant's conduct. Nor did either the Legislature or the director purport to do so. If a moral judgment were involved, the alcoholic (or, as affected by other sections of the regulation, the drug addict, the sexual deviate, and the antisocial person) would be deprived of benefits, even though his conduct or attitudes had brought about a major physical or mental impairment. But this does not happen. No one contends that the person whose plight is so far advanced is not entitled to benefits because, perchance, he has brought his affliction upon himself. Nor does anything said herein disparage any program of purposeful rehabilitation.

I believe the regulation is a valid one and that it accords with the intent of the Legislature. I would affirm the judgment.

Respondent's petition for a hearing by the Supreme Court was denied September 24, 1970. Wright, C. J., and Sullivan, J., were of the opinion that the petition should be granted.