[Civ. No. 42535. Second Dist., Div. Two. May 24, 1974.]

MOLLY PIONTKOWSKI, Plaintiff and Appellant, v.
DWIGHT GEDULDIG, as Director, etc., Defendant and Respondent.

**COUNSEL**

Daniel M. Luevano, Rosalyn M. Chapman, Philip L. Goar and Terry J. Hatter for Plaintiff and Appellant.

Evelle J. Younger, Attorney General, Elizabeth Palmer, Assistant Attorney General, Edward M. Belasco, Blanche C. Bersch and Anne S. Pressman, Deputy Attorneys General, for Defendant and Respondent.

## OPINION

**ROTH, P. J.**—The trial court refused to mandate Geduldig, the Director of the State Department of Health Care Services (respondent), to supply Molly Piontkowski (appellant), a recipient of aid under the California Medical Assistance Program (Medi-Cal), with an orthopedic mattress and box springs. Appellant concedes that her request in respect of box springs was appropriately denied. The sole issue on this appeal is, therefore, whether regulations[1] adopted by respondent to assist in the distribution and administration of basic Medi-Cal benefits listed in section 14132 of Welfare and Institutions Code,[2] did properly exclude an orthopedic mattress as an item of relief to which appellant was entitled.

### FACTS

Appellant suffers from tuberculosis of the spine and from osteomyelitis. To relieve her pain, her doctor prescribed a back brace and an orthopedic mattress.[3] Appellant's request to Medi-Cal for a back brace was approved but a request for a mattress and box springs was denied. Challenging the denial, appellant requested and received a hearing under section 10950, et seq., before a referee who rejected her claim. The referee's decision was ratified by respondent and was followed by the superior court when it denied appellant's petition for mandate. This appeal followed.

The petition of appellant and her appeal to this court are clearly bottomed upon its averments that respondent, when it enacted the regulations referred to in footnote 1, exercised quasi-legislative powers which did not include authority to adopt regulations which specifically excluded orthopedic mattresses from coverage. Such exclusion appellant argues is contrary to the legislative intent. As posed by the averments of the petition, resolution of this question on appeal is governed by Code of Civil Procedure section 1085 and not by section 1094.5 of that code. In reviewing the denial of the petition, this court, strictly speaking, is limited to ". . . whether [respondent's] action has been arbitrary, capricious, or entirely lacking in evidentiary support, . . ." (*Pitts* v. *Perluss* (1962) 58 Cal.2d

---

[1]California Administrative Code, title 22, sections 51003(e), 51315, 51321(e)(8) and (f), 51521 and 51621(h).

[2]Except where otherwise indicated, all statutory references herein are to the Welfare and Institutions Code.

[3]It should be noted that appellant's physician did not formally prescribe an orthopedic mattress. He merely made a notation that "pain would be relieved by a firm orthopedic mattress." This notation, although written on a Medi-Cal prescription form, does not constitute a medical prescription. Since the parties treat it as a prescription in the stipulated record, we accept it as such.

824, 833 [27 Cal.Rptr. 19, 377 P.2d 83].) We recognize, however, that it is the public policy of this state to liberally construe section 14132 and all the applicable sections of the Welfare and Institutions Code, and that regulations which alter or restrict the intention of the statute should be disregarded. (§ 11000; *Morris* v. *Williams* (1967) 67 Cal.2d 733, 748 [63 Cal.Rptr. 689, 433 P.2d 697]; *Rosas* v. *Montgomery* (1970) 10 Cal.App. 3d 77, 88 [88 Cal.Rptr. 907, 43 A.L.R.3d 537].) To consummate state policy we have, in spite of our function and limited review under Code of Civil Procedure section 1085, and because a state-wide agency is involved, reviewed the entire record, in the same manner as if we were exercising independent judgment. (*Pitts* v. *Perluss* (1962) 58 Cal.2d 824, 833 [27 Cal.Rptr. 19, 377 P.2d 83]; *Paule* v. *State Personnel Board* (1974) 38 Cal.App.3d 32, 34 [113 Cal.Rptr. 38].) Appellant's primary point is that the administrative interpretation of section 14132 as set forth in the regulations in footnote 1 does not reflect the legislative intent. Appellant somewhat illusively also asserts that regulation 51321(e)(8) (exclusion of an orthopedic mattress) operates to deny her due process of law.

This court cannot lightly disregard respondent's interpretation of section 14132, especially when fortified by a series of regulations clearly designed to aid in a proper administration of Medi-Cal and a distribution of benefits thereunder.

Section 14132 sets forth the basic schedule of benefits which are available under the Medi-Cal Program. It provides in pertinent part that: "(k) Prosthetic and orthotic devices and eyeglasses are covered, subject to utilization controls.

". . . . . . . . . . . . . . . . . .

"(m) Durable medical equipment and medical supplies are covered, subject to utilization controls."

To implement section 14132 respondent, pursuant to section 14105, has adopted rules and regulations referred to in footnote 1. In pertinent part the applicable sections of the California Administrative Code are:

Section 51315 of the regulations covers prosthetic and orthotic appliances and provides: "All prosthetic and orthotic appliances necessary for the restoration of function or replacement of body parts as prescribed by a licensed physician or podiatrist are covered when provided by a prosthetist or orthotist, respectively. A written prescription and prior authorization are required for purchase, rental or repair of such appliances when the program cost for purchase, cumulative rental or repair is more than $15.00.

"(a) The authorization request shall specify the type of appliance and include the medical diagnosis, prognosis, and an explanation of the purpose that the appliance will serve.

"•   •   •   •   •   •   •   •   •   •   •   •   •   •   •   •   ."

Section 51321 covers Durable Medical Equipment and provides, in pertinent part, that: "(b) Prior authorization is required for the purchase, cumulative rental, repair or maintenance of durable medical equipment listed in 51521 when the cost to the program exceeds $15.00. Purchase or rental of unlisted devices or equipment is subject to prior authorization regardless of the dollar amount involved.

"•   •   •   •   •   •   •   •   •   •   •   •   •   •   •   •   •

"(e) The following items are not covered by the program: . . . (8) *Orthopedic mattresses* [italics added].

"(f) Authorization shall not be granted for medical equipment when a household item will adequately serve the patient's medical needs."

Section 51521 is entitled "Assistive Devices (Durable Medical Equipment)" and lists those items for which reimbursement for rental or purchase may be made under the Medi-Cal Program. One of the items listed is "plywood bedboard" (§ 51521(h)).

The matter of prior authorization for rendering of services under the Medi-Cal Program is covered by section 51003, which provides, in part, that: "(e) Authorization may be granted only for items or services that are medically necessary and do not exceed the items or services received by the public generally for similar medical conditions. . . ."

Appellant argues that section 14132 allows orthotic devices and/or durable medical equipment and, therefore, an orthopedic mattress is necessarily included under the plain meaning of those words. (Dorland's Illustrated Medical Dictionary (24th ed. 1965); 2 Schmidt, Attorneys Dictionary of Medicine (1971); Stedman's Medical Dictionary (various editions); Taber's Cyclopedic Medical Dictionary (1955).) This contention does not withstand analysis.

Dorland's, cited by appellant, defines: "orthotic (or-thot'ik). 1. Pertaining to or promoting the straightening of a deformed or distorted part. 2. Orthostatic."

"Orthostatic (or"tho-stat'ik) [*ortho-* + Gr. *statikos* causing to stand]. Pertaining to or caused by standing erect."

Moreover, a "device" is defined as "*a piece of equipment or a mechanism* designed to serve a special purpose or perform a special function." (Webster's Third New Internat. Dict. (Unabridged) p. 618). (Italics added.)

It is notable that the legislative provisions for orthotic devices are made in the context of prosthetic devices and eyeglasses. (Welf. & Inst. Code, § 14132, subd. (k).) Dorland's Illustrated Medical Dictionary at page 1230 gives the following definitions: "prosthetic (pros-thet'ik). Pertaining to prosthesis." "prosthesis (pros'the-sis), pl. *prosthe'ses* [Gr. "a putting to"]. 1. The replacement of an absent part by an artificial substitute. 2. An artificial substitute for a missing part, such as an eye, leg, or denture; the term is also applied to any device by which performance of a natural function is aided or augmented, such as a hearing aid or eyeglasses. . . ."

The provisions of section 14132, subdivision (k) were clearly intended to make available to Medi-Cal recipients items designed to provide artificial aids or substitutes for impaired bodily functions. The regulation which respondent has adopted on this subject reflects the inherent nature of an orthotic device. Section 51315 of the Administrative Code provides: "All prosthetic and orthotic appliances *necessary for the restoration of function or replacement of body parts* as prescribed by a licensed physician or podiatrist are covered when provided by a prosthetist or orthotist, respectively. . . ." (Italics added.) It is clear that an orthopedic mattress is not an orthotic or prosthetic device within the meaning of section 14132, subdivision (k).

Appellant urges that an orthopedic mattress may be considered an item of "durable medical equipment" under section 14132, subdivision (m). There are, of course, a great many items found in the home that can be of some medical assistance to a patient: a bicycle might build up a patient's strength, a good book might relieve depression, and a firm mattress might aid sleep or ease pain. Respondent has set up a workable definition by supplying only those items "used primarily for health care." (Cal. Admin. Code, tit. 22, § 51321(e)(11).) The federal government has taken the same approach in providing the "durable medical equipment" required under the federal Health Insurance for the Aged Program (Medicare), (42 U.S.C. § 1395x(s)(6).) Specific provisions under the federal program would exclude appellant's claim for an orthopedic mattress as durable medical equipment. (1 CCH Medicare & Medicaid Guide, ¶ 3144 at p. 1269; (1969-1972) CCH Medicare & Medicaid Guide, ¶ 26,084 at p. 9218). Since appellant admits that California's Medi-Cal program was enacted pursuant to the federal Grants to the States for Medical Assistance

Program (Medicaid) (42 U.S.C. § 1396 et seq.), any interpretation of "durable medical equipment" given by a related program such as Medicare is relevant, material and persuasive in determining the interpretation of a substantially similar situation in the administration of Medi-Cal. Even if Medi-Cal were not closely associated with Medicare, the Medicare interpretation at least suggests that respondent's interpretation is within the generally accepted usage of durable medical equipment.

■ The concept of Medi-Cal and the primary legislative intent which inspired the program is concisely stated at section 14000, subdivision (b)[4]: "The means employed shall be such as to allow, to the extent practicable, eligible persons to secure health care in the same manner employed by the public generally, and without discrimination or segregation based purely on their economic disability." The record is clear that respondent has in all respects complied with the established medical definitions of orthotic and durable devices and with the general public's acceptance of the terms as so defined. Medi-Cal is intended to provide "mainstream" medical care to its recipients. (§ 14000, subd. (b).) We find nothing in the stipulated record which indicates that the regulations criticized by appellant restrict or abort any of the purposes of the Medi-Cal program or that they impair even slightly the type of health care to eligible persons which are available to the public generally. We find nothing in the record which suggests an arbitrary or capricious exercise of authority by respondent.

Further, the record contains substantial unrefuted medical testimony that patients with appellant's ailments comprised within the general public generally use a plywood board under a mattress. Specifically, Dr. Ivan testified affirming her medical conclusion that appellant did not need an orthopedic mattress and that a plywood bed board would be prescribed for recipients suffering from tuberculosis of the spine. Such boards are specifically provided for under the program. (Cal. Admin. Code, tit. 22, § 51521(h).)

We further note that the record is such that were we to treat this appeal as a review under Code of Civil Procedure section 1094.5 there would be no justification to disturb the judgment.

■ Finally, appellant argues that a regulation which specifically excludes orthopedic mattresses from Medi-Cal coverage (Cal. Admin. Code, tit. 22, § 51321(e)(8)) establishes an irrebuttable presumption that such a mattress can never be considered as part of a remedial or preventative pro-

---

[4]Section 14000 was amended in 1972 and the legislative intent is now found in subdivision (a).

gram in the promotion of appellant's health and care, and thus violates the due process clause of the Fourteenth Amendment. (*Heiner* v. *Donnan* (1932) 285 U.S. 312, 329 [76 L.Ed. 772, 780, 52 S.Ct. 358].) There is no such presumption at bench. The regulation simply states that orthopedic mattresses do not fit within the definitions of items available under Medi-Cal. We are not dealing with a presumption. We deal with an exclusion made pursuant to statutory authority in strict accord with settled medical and generally accepted public definitions, consistent in all respects with the declared legislative intent as defined in the Medi-Cal statutes. To include a proper exclusion requires a redefinition or extension of pertinent language of the act itself. Such an inclusion or redefinition is the function of the Legislature.

The judgment is affirmed.

Fleming, J., and Beach, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied July 31, 1974.