[Civ. 37926. First Dist., Div. Two. May 10, 1976.]

NELLIE WELSH, an Incompetent Person, etc.,
Plaintiff and Appellant, v.
ROBERT GNAIZDA, as Acting Director, etc., et al.,
Defendants and Respondents.

**COUNSEL**

H. David Grunbaum for Plaintiff and Appellant.

Evelle J. Younger, Attorney General, Elizabeth Palmer, Assistant Attorney General, and Asher Rubin, Deputy Attorney General, for Defendants and Respondents.

**OPINION**

**THE COURT.**\*—Appellant Welsh, by her guardian, filed a petition for peremptory writ of mandate (Code Civ. Proc., § 1094.5) to challenge an unfavorable interpretation by the State Department of Health relating to her eligibility for medically needy only (MNO) benefits under the Medi-Cal program. The interpretation in question applied a pro rata formula to the value of the encumbrance on appellant's home with the result that after the application of the formula, appellant was found to be ineligible for MNO benefits. The petition was denied, and this appeal follows.

Appellant is a resident of a skilled care nursing facility. Upon hospitalization in an extended care medical facility, her home, previously excluded in computing old age assistance benefits, became "other real property" since the medical facility was her place of residence. According to the 1972-1973 tax statement, the real property had an

---

\*Before Taylor, P. J., Kane, J., and Rouse, J.

assessed value of $6,150. The unpaid balance of the real estate loan against the property was $6,045.

Section 14006 of the Welfare and Institutions Code defines "other resources." At the times here involved, it provided: "If the holdings are in the form of real property, the value shall be computed on the basis of four (4) times the assessed value less the unpaid amount of any encumbrance of record." The section was amended in 1974; however, that provision remained unchanged. (Stats. 1974, ch. 1240, § 5.)

Section 14105 of the Welfare and Institutions Code, as it read at the time of hearing and after the 1974 amendment, provides: "The director shall prescribe the policies to be followed in the administration of this. chapter . . . and shall adopt such rules and regulations as are necessary for carrying out, not inconsistent with, the provisions thereof."

The pertinent administrative regulation is found in section 50609 of title 22 of the California Administrative Code. The applicable portion thereof states: "(b) Real property other than a home, owned by an applicant or by an applicant and his spouse or by a family group, may be retained provided the assessed value does not exceed $5,000.

"  .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

"(c) Additional real and personal property as defined in Sections 50041 and 50043 may be retained where the total market value less encumbrances of record does not exceed:

"  .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

"(3) For a medically needy person whose eligibility is based upon deprivation of parental support or for a medically needy family group:

"1 person.  .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   . $1,500

"  .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

"(d) When the assessed value of real property is in excess of $5,000, the market value of the amount in excess of $5,000 shall be included in the amounts specified in (c)."

The hearing examiner granted appellant's claim for Medi-Cal benefits as a medically needy person. The reason for decision states: "Title 22, CAC Section 50609(b) states that real property other than a home, owned by an applicant, may be retained provided the assessed value does not exceed $5,000.00. The assessed value of claimant's property exceeds $5,000.00 by $1,150.00.

## "II

"When the assessed value of real property is in excess of $5,000.00, the market value in excess of $5,000.00 shall be included and evaluated as additional real property. Title 22, CAC Section 50609(d).

"Market value is four times the assessed value. Title 22, CAC Section 50609(b)(1). Using this formula the market value of claimant's property which is in excess of the $5,000.00 assessed value is $4,600.00 ($1,150 x 4).

## "III

"Title 22, CAC Section 50609(c) provides that additional real or personal property may be retained where the total market value less encumbrances does not exceed $1,500.00 for an aged person.

"Claimant has verified an encumbrance against the property totalling $6,045.00. Deducting the encumbrance from the market value ($4,600) results in a $\emptyset$ market value of claimant's property to be included in the $1,500.00 real property reserve. The value of claimant's real property, therefore, comes within property limits established above. The County's discontinuance of claimant's Medi-Cal benefits was, therefore, incorrect."

The decision of the director reversed the hearing officer and ordered the claim denied. The application of law as set out in the director's decision states:

## "I

"Title 22, C.A.C., Section 50609(b) states that real property other than a home, owned by a recipient, may be retained provided its assessed value does not exceed $5,000.

"As the assessed value of the claimant's property is $6,150, her property exceeds the $5,000 limit by $1,150.

"II

"Title 22, C.A.C., Section 50609(d) provides that when the market value of real property other than a home is more than $20,000 (excess value exceeds $5,000) the amount in excess of $20,000 is not excluded; it is considered an available resource and its net value is included in the property reserves in determining eligibility. *When the property is encumbered, such encumbrances must be prorated and that prorated share applicable to the excess amount is subtracted from the excess market value to determine the net market value.* Only the applicant's share of the excess real property is included in the property reserves.

"The assessed value of the claimant's property is $6,150. The market value of the claimant's property is $24,600 (4 x $6,150). The claimant's property is encumbered by $6,045. Therefore, the net value of excess market value over $20,000 is $3469.

$$(\$24,600 - \$20,000) (1 - \frac{\$ 6,045}{24,600})$$

"($ 4,600) (1 − .2457)

"($ 4,600) (.7543) = $3469

"III

"Title 22, C.A.C., Section 50609(c) provides that additional real or personal property may be retained where the total market value less encumbrance does not exceed $1,500 for an aged person. Pursuant to the above-quoted statute, inasmuch as the value of the claimant's real property exceeds the property limitations as established by C.A.C., the county's action to discontinue the claimant's Medi-Cal benefits was correct, and must be sustained." (Italics supplied.)

The computations in the director's decision were apparently based on Medi-Cal Letter No. 33-73, December 21, 1973, which provides: "If the market value exceeds $20,000.00 the excess amount of the market value over $20,000.00 minus the *prorated* encumbrances, is considered a resource and included in the property reserves in determining eligibility"

(italics supplied) and sets forth the procedure to be followed in prorating the encumbrance to determine "an available resource." The Medi-Cal letter was to be applied "to all new applications, reapplications and redeterminations effective January 1, 1974."

■ Appellant contends that respondent's reliance on Medi-Cal Letter No. 33-73 is invalid since it impairs the scope of and is inconsistent with the eligibility provisions found in section 50609, *supra.* Respondent argues that appellant "has inflated the issue here far beyond its true scope." We conclude that appellant is correct.

*Rosas* v. *Montgomery* (1970) 10 Cal.App.3d 77 [88 Cal.Rptr. 907, 43 A.L.R.3d 537] held that an applicant afflicted with alcoholism cannot be disqualified upon the sole basis of an administrative regulation adopted by the Director of Social Welfare and purporting to exclude alcoholism as a qualifying "impairment." In reaching that conclusion, the court, in discussing the director's rulemaking power, stated, at pages 87-88: "The existence of the director's rulemaking power is not open to question: it is explicitly granted in sections 10553 (subd. (d)) and 10604 (subd. (b)), and limited to him by section 10554 (see fn. 5, *ante*). The Legislature, however, did not explicitly authorize him to define an 'impairment' for ATD purposes or to exclude alcoholism or any other 'personality disorder' as a qualifying 'impairment.' His exercise of the rulemaking power in this instance is therefore subject to the express limitations that his regulations be 'consistent with law' (§ 10553, subd. (d)) and 'not in conflict with the law' (§ 10604, subd. (b)). Moreover, when a state agency is authorized by law 'to adopt regulations to implement, interpret, make specific or otherwise carry out the provisions of the statute [see § 10604, subd. (b)], no regulation adopted is valid or effective unless consistent and not in conflict with the statute and reasonably necessary to effectuate the purpose of the statute.' (Gov. Code, § 11374; *Morris* v. *Williams* (1967) 67 Cal.2d 733, 748 [63 Cal.Rptr. 689, 433 P.2d 697].) 'While the construction of a statute by officials charged with its administration, including their interpretation of the authority invested in them to implement and carry out its provisions, is entitled to great weight, nevertheless "Whatever the force of administrative construction . . . final responsibility for the interpretation of the law rests with the courts." [Citation.] Administrative regulations that alter or amend the statute or enlarge or impair its scope are void and courts not only may, but it is their obligation to strike down such regulations. [Citations.]' *(Morris* v. *Williams, supra.)*"

The legislative standard is set forth in section 14006 of the Welfare and Institutions Code. It does not provide for prorating the amount of the encumbrance, and we note that the prorating requirements were not introduced in the legislative amendments which were enacted in 1974.

As *Rosas* points out: " '[T]he better and more modern rule of construction is to construe a legislative enactment in accordance with the ordinary meaning of the language used and to assume that the Legislature knew what it was saying and meant what it said.' [Citation.]" (10 Cal.App.3d at p. 90.) "Although the breadth of the standard may vary with the subject matter of the legislation, it must not enable an administrative agency to exercise greater discretion than that which is necessary for the fulfillment of the Legislature's purposes. [Citations.]" (*Clean Air Constituency* v. *California State Air Resources Bd.* (1974) 11 Cal.3d 801, 818 [114 Cal.Rptr. 577, 523 P.2d 617].)

The manner in which the director computed appellant's eligibility impaired the scope of both the statute (Welf. & Inst. Code, § 14006) and the administrative regulation (Cal. Admin. Code, tit. 22, § 50609). In view of the conclusion we have reached, it is unnecessary to discuss appellant's other contention.

The judgment is reversed with directions to grant the peremptory writ.