[Civ. No. 2925. Fourth Dist. Nov. 14, 1941.]

JAMES A. CLARK, Respondent, v. METROPOLITAN LIFE INSURANCE COMPANY (a Corporation), Appellant.

Walker, Adams, Duque & Smith, Henry Duque and Mark E. True for Appellant.

Harold A. McCabe for Respondent.

GRIFFIN, J.—This is an action by respondent to recover from the defendants and from appellant Metropolitan Life Insurance Company, a corporation (hereinafter called the Insurance Co.) for total and permanent disability benefits which respondent claims he was entitled to receive under the provisions of a policy of group insurance issued by appellant to respondent's former employer, Tidewater Associated Oil Company (hereinafter called the Oil Co.), successor to the Associated Oil Company, a corporation. The two last named companies were joined as defendants under an alleged claim of conspiracy to defraud respondent of the benefits due under the policy. At the conclusion of respondent's case motions for dismissal and nonsuit in the action as to these defendants were granted. As to appellant, the cause was submitted to the jury. Judgment was rendered on its verdict in the sum of ''$2587.50 as total disability benefits provided for in the policy.'' Special interrogatories were submitted and returned.

From 1922 to 1936 respondent was employed as a plumber for the Oil Co. In 1924, he first noticed some difficulty with his ability to hear. He gradually continued to lose his power of hearing and in 1930 it became necessary for him to wear a hearing aid. From 1936 to 1937 respondent was assigned to duties as a ''roust about,'' apparently due to his lack of hearing, impairment of vision, hand and feet tremors, myocardial damage to the heart, and indigestion—gaseous distension. He was given these lighter duties until October 31, 1937, when the Oil Co. placed respondent, with approximately 20 other employees, on the ''inactive pay roll'' at a salary of $60 per month. During all of this time deductions were made from respondent's salary to pay his proportionate share of the cost of the policy. This arrangement was continued until April 30, 1938, at which time respondent's employment with the Oil Co. was terminated by it. In Septem-

ber, 1939, respondent filed with appellant a claim for total and permanent disability benefits in which he stated that he had become totally and permanently disabled on October 29, 1937, by reason of deafness and partial blindness which had developed over a period of years.

Appellant disclaimed any liability for the payment of disability benefits. This action followed. The amended complaint sets up the terms of the policy and avers in part that on December 31, 1923, appellant agreed with defendants to insure the life of respondent as an employee of defendants; that said agreement contained certain provisions relative to total and permanent disability benefits reading as follows:

"(8) Total and Permanent Disability Benefits. Upon receipt, at the Home Office in the City of New York, of due proof that any employee, not working in Mexico, while insured hereunder, and prior to his sixtieth birthday, has become totally and permanently disabled, as the result of bodily injury or disease, so as to be prevented thereby from engaging in any occupation and performing any work for compensation or profit, the company will, in lieu of the payment at death of the insurance on the life of the said employee, as herein provided, pay equal monthly installments as hereinafter described . . . "

The answer of appellant admits the issuance of the policy as alleged but denies that respondent has been disabled as alleged in his complaint; admits that certain proofs of disability have been furnished to it and that claim has been made for total and permanent disability benefits in the sum of $2,587.50 and that it has refused to pay or grant said benefits. The answer further denies any knowledge of or participation in a conspiracy to defraud respondent of said claimed disability benefits.

On the trial of the issues and at appellant's request, the following special interrogatories were propounded to the jury: "(1) Was plaintiff, James A. Clark, totally and permanently disabled so as to be permanently and continuously and wholly prevented thereby from performing any work for compensation or profit prior to May 1, 1938?" The jury answered in the affirmative. "(2) Did plaintiff, James A. Clark, prior to May, 1938, furnish to defendant, Metropolitan Life Insurance Company, due proof that he was totally and permanently disabled so as to be permanently and continuously

and wholly prevented thereby from performing any work for compensation or profit?'' The jury answered in the negative. A general verdict in favor of respondent was returned by the jury in accordance with the prayer of the complaint. Appellant appeals from the judgment entered upon the verdict.

Appellant first contends that the evidence was insufficient to support the judgment in that respondent failed to prove that he was totally disabled within the meaning of the group policy sued upon and at a time prior to the termination of his employment or at any time while insured under the policy.

From a chronological history of the development of respondent's claimed total and permanent disability it appears from his testimony that while working for the Oil Co. as a plumber as early as 1924, he had some difficulty with his hearing which became acute by 1930; that by 1936 or 1937, his hearing was entirely gone; that since 1928, he has had serious stomach trouble (stomach ulcers); that in 1937, he had dizzy spells and heart trouble; that in 1936, he had sore lungs; and in 1936, he began having eye trouble. On cross-examination, in answer to counsel's inquiry: ''Are you near-sighted?'' respondent replied: ''Well, no, I ain't near-sighted, my eye-sight has gone.'' He also testified that his condition was practically the same in April, 1938, as it was at the present time. In regard to respondent's ability to work he testified as follows: ''Q. Now, Mr. Clark, have you worked any since you were let off over there on November 1st, 1937? A. No. Q. Why not? A. I ain't able . . . A. Yes, I tried to get a job but nobody don't want me. I ain't able to work. They all tell me I ain't able.''

A Dr. Curtis was called as a witness for respondent. He testified that he had treated respondent in the past for minor ailments; that he had examined him over a period of ten years and found that as ''far as air conduction is concerned he is totally deaf in both ears''; and ''as far as bone conduction is concerned he is almost totally deaf''; that his deafness is progressive and a permanent condition; that he is extremely nervous and quite imaginative; that he thinks people are talking about him; that this condition has ''affected his mind, his mentality''; that he complains of extreme pain over the entire abdomen; that he has complained

of his heart condition for several years; that in his opinion that (heart condition) refers back to his nervousness. In response to this question: "In your opinion is his physical condition at the present time such as to render him unable to perform substantial and material acts pertaining to his business in the oil fields?" the doctor replied: "If his business is such it would require him to work around machinery; if it is rig building, I would say absolutely yes. If he was a plumber where he was working alone and had certain routine work to do I think possibly he could handle that, but as far as working around machinery is concerned, it would be extremely dangerous to himself and fellow employees . . . I feel that he will be totally disabled because of his nervous condition and his mental condition if he does not find something that he has been used to doing over these years . . . Q. What would your opinion be, doctor, as to whether he was disabled in April of 1938? A. I don't think there is any question but what he was the same." On cross-examination, however, the doctor testified as follows: "Q. Would you say in April of 1938, he was unable to engage in the occupation of a plumber? A. No. I think that he could do that work. Yes, I think it would be all right if he was not around machinery or around other people . . . I mean in anything that would endanger . . . I mean where he would be in a dangerous spot . . . Q. And so far as the deafness was concerned, in April of 1938, and at any time prior thereto, that deafness was disabling to him only in that it prevented him from engaging in work which entailed him working in machinery or in employments where he could not hear a warning sound? A. That is right." Respondent then established the fact that the witness had been on the panel for one of the defendant oil companies for five or six years. The witness was shown a statement signed by him which was forwarded to the insurance company with the respondent's proof, showing the following: "Q. Is he (Clark) wholly disabled at the present time? Is he wholly unable to engage in any work, occupation, or business?" After which questions he wrote: "Yes".

A Dr. Harwood was called by respondent. He examined respondent for the first time on November 19, 1940, the second day of the trial. He testified that respondent had hand and feet tremors; was totally deaf; had definite impairment

of vision and myocardial damage to the heart; that in his opinion respondent, in April, 1938, was not able to do his work either as a "roust about" or plumber in the oil fields; that in his opinion he was unable to perform any occupation from which he might gain a livelihood.

Appellant produced no medical testimony on the subject. Its witness, a production foreman of the Oil Co., testified that respondent did "his work as well the last day I knew him as he did the first day I knew him." Another witness for appellant, superintendent of the Oil Co., testified that respondent's employment was terminated "because the job he was doing was over."

It is now claimed that in the light of the testimony, respondent's physical activities were such as to preclude any finding of total disability but on the contrary prove that he was not totally disabled on October 31, 1937, or on or prior to April 30, 1938; that the medical testimony of neither doctor establishes total disability; that the testimony of Dr. Harwood is entitled to little, if any, weight due to the fact that he had never examined respondent until the second day of the trial.

The question of the weight to be given evidence is for the jury and the trial court and not a court of review. Where there is a conflict between scientific testimony and testimony as to facts, the jury or trial court must determine their relative weight. (*Rolland* v. *Porterfield*, 183 Cal. 466 [191 Pac. 913].)

Appellant recognizes the rule applied in this state and quotes from *Hurwit* v. *Prudential Ins. Co. of America*, 45 Cal. App. (2d) 74 [113 Pac. (2d) 691], citing *Hill* v. *New York Life Ins. Co.*, 38 Cal. App. (2d) 627 [101 Pac. (2d) 752] (opinion by this court), and *Wright* v. *Prudential Ins. Co.*, 27 Cal. App. (2d) 195 [80 Pac. (2d) 752], as follows:

"The authorities supporting this rule define total disability which prevents the insured from engaging in any occupation or performing any work for compensation as a disability which prevents his working with reasonable continuity in his customary occupation or in any other occupation in which he might reasonably be expected to engage in view of his station and physical and mental capacity." (Citing cases.)

 It is contended, however, that the evidence does not bring respondent within this rule. The facts most favorable to respondent in the instant case, if believed by the jury, clearly bring them within the rule and permit a recovery under the total disability clause of the policy. The question whether respondent was totally disabled, under the rule and terms of the policy, is a question of fact for the jury to decide from all the circumstances surrounding the employment, and where the evidence is legally sufficient to sustain its conclusion thereon, it is beyond the power of the appellate court on appeal to interfere therewith. (*Sherman* v. *Continental Casualty Co.*, 103 Cal. App. 518 [284 Pac. 946]; *Ives* v. *Prudential Insurance Co.*, 12 Cal. App. (2d) 306, 308 [55 Pac. (2d) 273].) The evidence being substantial and legally sufficient, the conclusion reached by the jury in this respect cannot be disturbed on appeal.

The second point presented is this: Appellant contends that under the provisions of the policy here in question the condition precedent to liability for disability benefits was the presentation to the insurer of proof of total and permanent disability while appellant was insured thereunder. Several pages of appellant's opening brief are devoted to a discussion of this point. In his reply brief, however, counsel now states: "Although we believe that this contention is amply supported by the authorities, we have been instructed by the Metropolitan Life Insurance Company to withdraw this defense inasmuch as it might be deemed to be a technical defense . . . and respectfully requests that the same be not considered by this court in its determination of this appeal." This point will therefore not receive our consideration.

 The third and last point raised by appellant is this: It contends that the only cause of action set forth in respondent's amended complaint is an action for conspiracy to defraud him of certain claimed rights to coverage under the group policy; that respondent failed to prove fraud or a conspiracy as alleged; that since the gist of respondent's cause of action is the alleged fraud or conspiracy, it was an *ex delicto* action, and his failure to prove the fraud or conspiracy was fatal to his case and the trial court's action in submitting the case to the jury on an *ex contractu* theory was prejudicially erroneous.

Respondent's amended complaint sets forth a cause of action on the policy against the appellant. It alleges the terms of the policy. A copy of the policy is attached thereto and made a part thereof. It alleges that respondent became totally and permanently disabled on or about October 31, 1937; that proof thereof was furnished to appellant; and that appellant refused to make payments of the benefits due. Respondent claimed that $2,587.50 was due and payable by the Insurance Co. Additional paragraphs were added endeavoring to show a conspiracy on the part of the oil companies and appellant to defraud respondent out of the benefits due. Judgment was sought against all defendants.

It becomes immediately apparent that the two oil companies were dismissed from the action due to failure of proof of any conspiracy or fraud. This left a cause of action against appellant based upon the terms of the policy. The Insurance Co. owed respondent no duty other than the performance of the contract on its part. The allegations of conspiracy and fraud between the oil companies and appellant were material only to the question of the liability of the oil companies. They added nothing to the cause of action against the Insurance Co. ■ A conspiracy itself is not actionable but only that which is done under the conspiracy. (*Kittle Manufacturing Co.* v. *Davis*, 8 Cal. App. (2d) 504 [47 Pac. (2d) 1089].) ■ Here the respondent stated a cause of action based on the contract of insurance in the first nine paragraphs of the complaint. A violation of such contract being the gist of the action, recovery thereon is authorized without proof of the conspiracy. (*Moore* v. *Finger*, 128 Cal. 313 [60 Pac. 933].)

Judgment affirmed.

Barnard, P. J., and Marks, J., concurred.