[Civ. No. 31616. First Dist., Div. One. June 21, 1973.]

REATHA ZUNINO, Plaintiff and Appellant, v.
ROBERT B. CARLESON, as Director, etc., Defendant and Respondent.

[Civ. No. 31860. First Dist., Div. One. June 21, 1973.]

JERI SINGER, Plaintiff and Appellant, v.
ROBERT B. CARLESON, as Director, etc., Defendant and Respondent.

**COUNSEL**

James W. Luther, Armando M. Menocal III and Christopher N. May for Plaintiffs and Appellants.

Evelle J. Younger, Attorney General, Elizabeth Palmer, Assistant Attorney General, David J. Bowie and Sheridan H. Brown, Deputy Attorneys General, for Defendant and Respondent.

**OPINION**

**ELKINGTON, J.**—We have consolidated for hearing and decision separate appeals of Reatha Zunino and Jeri Singer. Each of these parties had applied for welfare aid as a needy "permanently and totally disabled" person under California's "Aid to Needy Disabled" Act (hereafter the "State Act"), found in Welfare and Institutions Code sections 13500 to 13801, inclusive. Abbreviated statutory references, unless otherwise stated, will hereafter be to the Welfare and Institutions Code.

The respondent Director of the State Department of Social Welfare (hereafter the "Department"), found neither applicant to qualify as a needy "permanently and totally disabled" person under the State Act. They then sought relief in the superior court by proceedings in mandate under Code of Civil Procedure section 1094.5. The instant appeals were taken from adverse decisions entered in those proceedings.

Subchapter XIV of the Social Security Act (42 U.S.C.A. §§ 1351-1355, inclusive) entitled "Grants to States for Aid to the Permanently and Totally Disabled," provides for federal funding to any state which has submitted to and had approved by the Secretary of Health, Education and Welfare (hereafter HEW), plans for aid to the state's needy permanently and totally disabled persons. We shall hereafter refer to subchapter XIV as the "Federal Act." The State Act reflects California's responsive plan which was submitted to, and approved by HEW. The Department is charged with the administration of the State Act.

HEW is required to make and publish such rules and regulations as may be necessary to the efficient administration of the Federal Act. But such rules and regulations may not be *inconsistent* with the Federal Act. (42 U.S.C.A. § 1302; *Hynes* v. *Grimes Packing Co.,* 337 U.S. 86, 123 [93 L.Ed. 1231, 1257, 69 S.Ct. 968]; *Helvering* v. *Sabine Trans. Co.,*

318 U.S. 306, 311-312 [87 L.Ed. 773, 776-777, 63 S.Ct. 569]; *Manhattan Co.* v. *Commissioner,* 297 U.S. 129, 135 [80 L.Ed. 528, 531-532, 56 S.Ct. 397]; *Miller* v. *United States,* 294 U.S. 435, 440 [79 L.Ed. 977, 981, 55 S.Ct. 440]; *Fawcus Machine Co.* v. *United States,* 282 U.S. 375, 378 [75 L.Ed. 397, 399, 51 S.Ct. 144]; *Utah Power & Light Co.* v. *United States,* 243 U.S. 389, 409 [61 L.Ed. 791, 818, 37 S.Ct. 387].)

Likewise, the Department is authorized to adopt rules and regulations for the purpose of implementing and interpreting the State Act (§§ 10553, 10554, 13502), which rules and regulations must be consistent with the State Act (§ 10553, subd. (d); *Morris* v. *Williams,* 67 Cal.2d 733, 737 [63 Cal.Rptr. 689, 433 P.2d 697]; *Rosas* v. *Montgomery,* 10 Cal.App.3d 77, 87-88 [88 Cal.Rptr. 907, 43 A.L.R.3d 537]). And, of course, the State Act and the Department's rules and regulations thereunder, are subordinate to the Federal Act and *valid* related HEW rules and regulations. (See *Carleson* v. *Remillard,* 406 U.S. 598, 601 [32 L.Ed.2d 352, 355-356, 92 S.Ct. 1932]; *King* v. *Smith,* 392 U.S. 309, 316-317, 333, fn. 34 [20 L.Ed.2d 1118, 1125-1126, 1134, 88 S.Ct. 2128]; *Ramos* v. *Montgomery,* 313 F.Supp. 1179, 1181 [affd. 400 U.S. 1003 (27 L.Ed.2d 618, 91 S.Ct. 572)].)

■ The Federal Act expressly requires California as a participating state to furnish financial aid to *"needy"* individuals 18 years of age or older who are *"permanently and totally disabled."* (Italics added; 42 U.S.C.A. § 1351.) It also provides that such aid shall be furnished to *"all eligible individuals; . . ."* (Italics added; 42 U.S.C.A. § 1352, subd. (a)(10).)

The Department concedes that both Reatha Zunino and Jeri Singer are *needy* persons; at least no contention is made to the contrary.

Our inquiry then is whether these persons are *permanently and totally disabled.*

The term "disabled" and its noun form "disability," in the context of the problem before us have a settled meaning. They connote an inability substantially to engage in any gainful occupation by reason of medically determinable physical or mental impairment. (See Gov. Code, § 31740; Unemp. Ins. Code, § 2626; *Alaska Ind. Bd.* v. *Chugach Assn.,* 356 U.S. 320, 323-324 [2 L.Ed.2d 795, 797-798, 78 S.Ct. 735]; *Berry* v. *United States,* 312 U.S. 450, 455-456 [85 L.Ed. 945, 948-949, 61 S.Ct. 637]; *Culley* v. *New York Life Ins. Co.,* 27 Cal.2d 187, 191 [163 P.2d 698]; *Erreca* v. *West. States Life Ins. Co.,* 19 Cal.2d 388, 394 [121 P.2d 689, 141 A.L.R. 68]; *Clark* v. *Metropolitan Life Ins. Co.,* 47 Cal.App.2d

773, 778 [118 P.2d 919]; Webster's New Internat. Dict. (3d ed. 1966) "Disability"; Words & Phrases (perm. ed.) "Disabled," "Disability.") The same usage is given the words by the Social Security Act. (See 42 U.S.C.A. § 416, subd. (i)(2), § 423, subd. (d)(1)(A); *Pierce* v. *Gardner*, 388 F.2d 846, 847-848 [cert. den. 393 U.S. 885 (21 L.Ed.2d 162, 89 S.Ct. 197)]; *Levine* v. *Gardner*, 360 F.2d 727, 730; *Flemming* v. *Booker*, 283 F.2d 321, 325.)

■ A strict rule of statutory construction requires that words of a statute be interpreted in their ordinary acceptation and significance, and with the meaning commonly attributed to them. (*United States* v. *Cooper Corp.*, 312 U.S. 600, 605 [85 L.Ed. 1071, 1074-1075, 61 S.Ct. 1742]; *Merrill* v. *Department of Motor Vehicles*, 71 Cal.2d 907, 918 [80 Cal. Rptr. 89, 458 P.2d 33].) ■ It will be presumed that Congress in enacting the Federal Act intended the ordinary and accepted meaning of the phrase, "permanently and totally disabled."

The record *without conflict* establishes that Reatha Zunino, because of physical impairment, is permanently unable to hold a job or otherwise engage in any gainful occupation; she is, however, able substantially to do her own housework. And although some evidence would indicate that Jeri Singer can keep house for herself and her five-year-old daughter, it is conceded by the Department that because of mental impairment, she is permanently precluded from participating in any remunerative activity.

Both Reatha Zunino and Jeri Singer would accordingly appear to qualify for aid to the permanently and totally disabled under the Federal Act, which as we have pointed out is binding on California and hence, the Department.

The Department points to section 13501 of the State Act as primary justification for its contrary determinations. It is there provided: "When used in this chapter, the following words shall have the meanings ascribed to them in this section: (a) 'Needy disabled person' means a person who meets the eligibility requirements set forth in this chapter and who is both permanently impaired and totally disabled. (b) 'Permanently impaired' means that the individual has a major physical or a major mental impairment, or a combination of both, which is verified by medical findings and appears reasonably certain to continue throughout the lifetime of the individual without substantial improvement. (c) *'Totally disabled' means that the impairment substantially precludes the individual from engaging in useful occupations within his competence, such as holding a job or homemaking.* Employment in a sheltered workshop or under an approved vocational rehabilitation plan shall not be considered a 'useful occupation' for purposes of this chapter."

Particularly, the Department relies on the language of subdivision (c) which we have here emphasized. It is argued that in the instant cases there was substantial evidence that the petitioners for aid were able to engage, in their own homes, in the useful occupation of *"homemaking."* This being so it is urged that they were not "permanently and totally disabled."

The "homemaking" provision of the State Act appears to have its origin in HEW Regulation 233.80 (36 Fed. Reg., pp. 3867-3868) purporting to implement the Federal Act which, as pertinent, states: "A State plan under [subchapter XIV] of the Social Security Act must:

"(1) Contain a definition of permanently and totally disabled, showing that:

"(i) 'Permanently' is related to the duration of the impairment or combination of impairments; and

"(ii) 'Totally' is related to the degree of disability.

"The following definition is recommended: 'Permanently and totally disabled' means that the individual has some permanent physical or mental impairment, disease, or loss, or combination thereof, that substantially precludes him from engaging in useful occupations within his competence, such as holding a job.

"Under this definition: . . . 'Totally' involves considerations in addition to those verified through the medical findings, such as age, training, skills, and work experience, and the probable functioning of the individual in his particular situation in light of his impairment; an individual's disability would usually be tested in relation to ability to engage in remunerative employment; *the ability to keep house or to care for others would be the appropriate test for (and only for) individuals, such as housewives, who were engaged in this occupation prior to the disability and do not have a history of gainful employment; . . .*" (Italics added.)

The Department argues that the portion of the regulation which we have here emphasized renders one who, although permanently unable to engage in any gainful activity, is able substantially to do homemaking in his or her own home, *not* permanently and totally disabled.

The HEW regulation is apparently designed to cover those persons without training, ability or experience in remunerative occupations, who prior to their permanent physical or mental impairment functioned only in nongainful tasks of housekeeping or caring for others, and whose impairment permits them to continue substantially in that capacity. Super-

ficially, it would appear that since their usual activities could continue unaffected by their impairment, there would reasonably be no need for aid. The regulation overlooks the foundational requirement that the recipient of such aid must be *needy*. Needy persons who *without compensation* engage only in housework or in caring for others must be rare, if existent at all. Persons engaging only in such unremunerative activities would ordinarily be supported by others or by their own means, and therefore not needy. If following their disability such support continues, the persons would not be needy and are therefore ineligible for aid. But if following their disability they are needy, and are permanently and totally disabled from pursuing gainful employment, the plain command of the Federal Act requires that they be furnished aid. In any event, to the extent that the regulation, contrary to the Federal Act, denies aid to needy persons who by reason of physical or mental impairment are substantially permanently and totally disabled from engaging in gainful employment, it must be deemed invalid.

Another regulation is quoted and argued in the parties' briefs. The Department, apparently trying to conform to the HEW regulation, adopted its Regulation 41-303.32 as follows:

"A homemaker is defined as a person of either sex who carries homemaking responsibilities for at least one person in addition to himself. A homemaker is evaluated against both employability and ability to carry the major duties of homemaking. A person living alone shall not be evaluated as a homemaker.

"A person who has carried the responsibilities for both homemaking and employment and is unable to continue employment shall be evaluated against homemaking. Homemaking responsibilities include maintenance of the home in an acceptable state of cleanliness, laundry, preparation of meals, procurement of necessary supplies. Activities of homemaking also include: the care of young children, such as lifting and carrying infants, and in an emergency, preschool children; accompanying children to community activities; to sources of medical care; and in primitive settings, carrying water or fuel and building fires.

"A finding that a person is unable to perform the occupation of homemaking shall require a determination that he is unable to perform a significant combination or grouping of homemaking activities because of his permanent impairment."

Under this regulation Reatha Zunino, since she lives alone, would not be a "homemaker" and thus would be classified as "permanently and totally

disabled." On the other hand, Jeri Singer with similar impairment, disability, and "homemaking" aptitude, taking care of her daughter, would not. But if perchance her child stopped living with her, by that circumstance alone Jeri Singer would then also become "permanently and totally disabled." The regulation sets up an artificial standard, divorced from reality and the concept of disability resulting from physical or mental impairment which is the essence of the Federal Act.

This regulation also is inconsistent with the Federal Act. To the extent that it is, we declare it to be invalid.

For the reasons stated we hold, notwithstanding the "homemaking" provisions of the State Act and the related state and HEW regulations, that the Federal Act requires the Department to furnish financial assistance, and other appropriate aid, to "needy individuals" 18 years of age or older who are permanently and totally disabled *"from engaging in any gainful occupation,"* by reason of mental or physical impairment. The record establishes that Reatha Zunino and Jeri Singer qualify as such needy permanently and totally disabled persons. The contrary decisions of the Department and the superior courts must therefore be reversed.

The judgment entered March 27, 1972, denying Reatha Zunino's petition for a writ of mandate is reversed. The superior court will grant the relief prayed for in the petition, and fix and award such costs and reasonable attorney's fees, if any, as may be authorized by law.

The order of January 10, 1972, denying Jeri Singer's petition for a writ of mandate, and the order of June 27, 1972, denying her motion for reconsideration, are and each is, reversed. The superior court will grant the relief prayed for in the petition, and fix and award such costs and reasonable attorney's fees, if any, as may be authorized by law.

Molinari, P. J., and Sims, J., concurred.

A petition for a rehearing was denied July 19, 1973, and the judgment was modified to read as printed above. Respondent's petition for a hearing by the Supreme Court was denied September 19, 1973.