131 N.J. Super. 216 (1974)
329 A.2d 340
ALBA SCHULTZ, PETITIONER-APPELLANT,
v.
MAURICE G. KOTT, PH.D., IN HIS CAPACITY AS ACTING COMMISSIONER, NEW JERSEY DEPARTMENT OF INSTITUTIONS AND AGENCIES; G. THOMAS RITTI, IN HIS CAPACITY AS ACTING DIRECTOR, NEW JERSEY DIVISION OF PUBLIC WELFARE; FRANCES ROBBINS, IN HER CAPACITY AS HEARING OFFICER, NEW JERSEY DIVISION OF PUBLIC WELFARE, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued October 7, 1974.
Decided November 13, 1974.
*218 Before Judges MICHELS, MORGAN and KENTZ.
Mr. Murray J. Klein argued the cause for appellant (Camden Regional Legal Services, Inc., attorney; Mr. Klein of counsel and on the brief).
Mr. Paul N. Watter, Deputy Attorney General, argued the cause for respondents (Mr. William F. Hyland, Attorney General of New Jersey, attorney; Mr. Richard M. Conley, Deputy Attorney General, of counsel; and Ms. Joan W. Murphy and Mr. Watter, Deputy Attorneys General, on the brief).
The opinion of the court was delivered by MORGAN, J.A.D.
Plaintiff appeals from a decision of the New Jersey Department of Institutions and Agencies, Division *219 of Public Welfare (hereinafter Division), denying her aid under New Jersey's program of public assistance to needy persons who are permanently and totally disabled, N.J.S.A. 44:7-38 et seq., because of the Division's so-called "homemaker" regulations. New Jersey Administrative Code 10: 81-8.7(A), 8.8(C), 8.15, 8.16. Plaintiff challenges the validity of these regulations as violative of the Supremacy Clause (U.S. Const., Art. VI) and Equal Protection Amendment of the United States Constitution (U.S. Const., Amend. XIV).
The public assistance program, known as Aid to the Permanently and Totally Disabled (hereinafter APTD), was a federal-state jointly funded public assistance program established by the federal Social Security Act, 42 U.S.C.A. § 1351 et seq., in which the State of New Jersey participates pursuant to N.J.S.A. 44:7-38 et seq. On January 1, 1974, however, those portions of the federal Social Security Act which provided for grants-in-aid to the states for the APTD program (Title XIV) were repealed pursuant to the provisions of Pub. L. 92-603, Title III, § 303; and a new program, known as the Supplemental Security Income (SSI) program, paid for and administered by the Federal Government, was created by Congress to aid the disabled, as well as the blind and elderly. (42 U.S.C.A., § 1381 et seq.). Through the enactment of L. 1973, c. 256 (N.J.S.A. 44:7-85) the New Jersey Legislature authorized the Commissioner of the Department of Institutions and Agencies to transfer funds previously appropriated for the former programs, including APTD, if such funds were necessary to implement the federally administered SSI program in New Jersey. Thus, as of January 1, 1974 the APTD program is nonexistent and the state "homemakers" regulation is no longer in effect. Although plaintiff's request to have this court enjoin enforcement of the "homemaking" regulation has consequently become moot, her eligibility for benefits under the repealed act from the date of her application therefor on *220 June 12, 1973 until its repeal is still a justiciable claim cognizable by this court.
Plaintiff is a 44-year-old woman who contends she has been unable to engage in gainful employment due to a chronic asthmatic condition which prevents her from tolerating even normal dust levels. She had previously received APTD benefits on a conditional basis until medical data concerning her condition was compiled. Such data disclosed to the Division that she was able to function as a homemaker for herself, her father and her daughter who live with her, and therefore was not totally disabled under the challenged "homemaker" regulations. She reapplied for benefits, which were denied on the basis of the State's "homemaking" regulations in the following terms:
The Decisional Panel concurs that the medical data relied on by the Medical Review Team establish the existence of a respiratory problem which could be considered permanent in relation to durational criteria specified in official regulation. However, the evidence supports a conclusion, despite the permanence of such condition, that the appellant, with some assistance from other persons possesses a significant combination of manipulative and managerial skills to assume responsibility for homemaking duties. Accordingly, a finding of total disability would be precluded and the finding of medical ineligibility to receive Disability Assistance is affirmed.
This appeal ensued.
The provisions of the federal Social Security Act pertaining to the formerly existing APTD program set forth the general purpose thereof, which was to enable each state:
[T]o furnish financial assistance, as far as practicable under the conditions in such State, to needy individuals eighteen years of age and older who are permanently and totally disabled * * *. [42 U.S.C.A. § 1351]
In an attempt to implement the stated purpose of the APTD program, the Division adopted by way of regulation the following standards against which an applicant's claim of total disability was to be measured:
*221 The term total refers to the inability of the client to perform those activities involved in carrying out the normal responsibilities necessary in employment or homemaking. Thus, total disability means inability to engage in a useful occupation, including homemaking. [N.J.A.C. 10:81-87(a). emphasis supplied]
The term "homemaking" was defined in New Jersey Administrative Code 10:81-15 in the following terms:
(B) 1. Homemaking involves ability to carry the home-management and decision making responsibilities and to provide essential services within the home for at least one person in addition to one's self. Homemaking may be generally divided into manipulative skills and managerial skills.
2. Manipulative skills include food preparation and service, cleaning and care of the home: washing and ironing clothes and household linens; care and repair of clothes and linens; feeding, bathing and dressing children and caring for adults who are invalids.
3. Managerial skills include the ability to manage household expenditures, and to plan, decide, select and purchase the food, clothing, household supplies and furnishings for the family. Social decisions include the ability to supervise the health care, to direct the education and to give social direction to the family, and to direct the training of young children.
(C) If a person is not able to perform a significant combination of these manipulative and managerial activities on a routine basis with little or no supervision or help from others, then a finding of permanent and total disability (in relation to the issue of homemaker) is authorized.
Although plaintiff was concededly in financial need and was not gainfully employed, she was declared ineligible for APTD benefits because she was found capable of performing household duties for one other than herself in accordance with the above-described "homemaker" regulations. Plaintiff challenges the validity of the "homemaker" regulations, contending they are in conflict with the stated purpose of the APTD program as set forth in 42 U.S.C.A. § 1351 and therefore violative of the Supremacy Clause of the United States Constitution. According to her position, Congress intended that all persons unable to participate in gainful employment due to a medical disability be eligible for APTD *222 benefits, and since her disability precludes gainful employment, she qualifies for assistance under federally mandated standards. Plaintiff contends that the "homemaking" criterion, used as the basis for denying her APTD benefits, betrays the stated purpose of § 1351 and is therefore invalid under the Supremacy Clause of the United States Constitution. She also contends that rejection of her claim for APTD benefits violated her right to the equal protection of the laws since homemaking capability is not reasonably related to the essential criterion for eligibility under the Social Security Act, that of capability for gainful employment.
When faced with the question of eligibility under various programs created by the Social Security Act purportedly implemented by challenged state regulations defining eligibility standards, the United States Supreme Court has set forth and applied the following guide:
[I]n the absence of congressional authorization for the exclusion clearly evidenced from the Social Security Act or its legislative history, a state eligibility standard that excludes persons eligible for assistance, under federal * * * standards violates the Social Security Act and is therefore invalid under the Supremacy Clause. [Townsend v. Swank, 404 U.S. 282, 286, 92 S.Ct. 502, 505, 30 L.Ed.2d 448 (1971)]
Carleson v. Remillard, 406 U.S. 598, 600, 92 S.Ct. 1932, 32 L.Ed.2d 532 (1972); referring to King v. Smith, 392 U.S. 309, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968). This test has been applied by the United States Supreme Court in three cases to invalidate state eligibility regulations which were found to be more restrictive than those found in the applicable federal Social Security Act standards for eligibility.
In King v. Smith, 392 U.S. 309, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968), at issue was an Alabama regulation denying eligibility to children otherwise qualified for aid to Families with Dependent Children Assistance (APDC) if their mother cohabited with any man. This regulation, known as the "substitute father" regulation, had been adopted as giving meaning *223 to the term "parent" as contained in 42 U.S.C.A. § 606(a). The court struck down the regulation, holding, in substance, that the stricken regulation defined "parent" in a manner inconsistent with the definition of "parent" in the Social Security Act, and since the effect of this inconsistency was to deny benefits to those who would have been eligible therefor under the federal act, the more restrictive state regulation was violative of the Supremacy Clause.
In Townsend v. Swank, 404 U.S. 282, 92 S.Ct. 502, 30 L.Ed.2d 448 (1971), the court was concerned with an Illinois regulation denying AFDC benefits to needy children 18 to 20 years of age who attended a college or university, while providing such benefits to children of the same age who attended a high school or vocational training school. The regulation was stricken as invalid under the Supremacy Clause since no authority for that discrimination could be found in the provisions of the parent federal legislation.
In Carleson v. Remillard, 406 U.S. 598, 92 S.Ct. 1932, 32 L.Ed.2d 352 (1972), a California regulation denied eligibility to needy children deprived of parental support as a result of their parent's military service commitment. The Supreme Court held that § 606(a), in defining "dependent child" as one deprived of parental support by reason of the "continued absence" from the home, did not exclude from eligibility those children whose parents were continually absent from home as a result of military service, and held the California regulation invalid under the Supremacy Clause.
Hence, according to King, Townsend and Carleson, a state may not impose more restrictive eligibility standards for federal-state funded public assistance programs established by the Social Security Act unless the state is able to find authority for such a restriction in the act itself evidencing legislative intent to permit such a restrictive application.
As previously noted, that portion of the Social Security Act which created the APTD program of public assistance (42 U.S.C.A. § 1351 et seq.) defined the fundamental eligibility *224 standard in terms of providing assistance to those persons 18 years of age and older who are in financial need, and who are permanently and totally disabled. In our view, the inclusion of requirements that the applicant be both in financial need and totally disabled compels the conclusion that it was disability precluding gainful employment which was the fact essential to APTD eligibility. If inability to support oneself through gainful employment had not been the intended standard for eligibility, Congress could have provided for all persons in financial need. If disability alone was to be the determinant for eligibility, then the fact of need would have been irrelevant. Inclusion of both standards, need and disability, therefore yields no conclusion other than that benefits were to be provided to those persons in financial need who, because of permanent and total disability, were unable to seek and hold a position of gainful employment.
The Division contends, however, that nowhere in the applicable provisions of the Social Security Act is the term "permanently and totally disabled" defined, and that the states were therefore free to provide specific content to that term by regulations adopted in intended implementation thereof. Such a contention ignores the circumstance that the phrase "permanently and totally disabled" had achieved a settled meaning by court construction of similar phraseology in a line of cases decided long prior to the adoption of § 1351. For example, in Miller v. United States, 294 U.S. 435, 55 S.Ct. 440, 79, L.Ed. 977 (1935), the Supreme Court, in interpreting the eligibility standard described by the words "total permanent disability" as used in the War Risk Insurance Act, 40 Stat. 407, held that
The burden was * * * not only to show the character and extent of his injury, but also to show that the result of the injury was to disable him permanently from following any substantially gainful occupation. [at 440, 55 S.Ct. at 442.]
In giving the words "total permanent disability" the meaning "they are ordinarily used and understood to convey," *225 Lumbra v. United States, 290 U.S. 551, 54 S.Ct. 272, 78 L.Ed. 492 (1934), the Supreme Court observed:
That which sometimes results in total disability may cause slight inconvenience under other conditions. Some are able to sustain themselves, without serious loss of productive power, against injury or disease sufficient totally to disable others. It cannot be said that injury or disease sufficient merely to prevent one from again doing some work of the kind he had been accustomed to perform constitutes the disability meant by the act, for such impairment may not lessen or affect his ability to follow other useful, and perchance more lucrative, occupations. Frequently serious physical impairment stimulates to successful effort for the acquisition of productive ability that theretofore remained undeveloped. [at 559, 54 S.Ct. at 275-276]
In defining the phrase "permanently and totally disabled" the courts have therefore emphasized the "productive ability" of the applicant or his ability to pursue a gainful occupation. In light of these decisions handed down long before § 1351 was adopted, it is understandable why Congress deemed unnecessary a more specific definition of the phrase in light of the settled meaning attributed to substantially similar phrases by previous decisions of the United States Supreme Court.
This assumption, that such is the settled meaning of the phrase, seems implicit throughout Congressional debate of the 1950 amendments to the Social Security Act which created the APTD program. In explaining H.R. 6000 (including the APTD program) to the House, Congressman Doughton, the sponsor not only of the 1950 amendments but also of the original Social Security bill in 1935, first described the "permanent and total disability insurance" provision of the bill in the following terms:
All persons covered by the old-age and survivors insurance program would be protected against the hazard of enforced retirement and loss of earnings caused by permanent and total disability. [95 Cong. Rec. 13822 (1949)]
After explaining the insurance program, Congressman Doughton further explained that the bill created "public assistance programs * * * to those persons who are unable, for one reason *226 or another, to be eligible for insurance benefits." Id. The APTD program here under consideration was one of the public assistance programs referred to, apparently intended to be made available on the same basis as the companion permanent and total disability insurance program.
The House Reports, too, specifically House Report 1300, relating to H.R. 6000s APTD provisions, corroborate that deprivation of productive capacity, inability to pursue a gainful occupation, are the factors essential to eligibility under this program.
Persons who work in non-covered employment will be among those particularly in need of the protection afforded by aid to the permanently and totally disabled. Of further pressing concern at the moment is the fact that there are many former workers disabled today who cannot qualify for insurance coverage. [H.R. 1300, 81st Cong., 1st Sec. at 54 (1949)]
Thus, from legislative history as well as from the terms of the act itself and prior court construction, the intent of Congress in establishing the APTD program appears clearly to have been to provide assistance for needy persons unable to engage in a remunerative occupation because of disability. Their expressed concern clearly was deprivation of earning capacity due to medically demonstrable permanent and total disability. The assistance provided by the program was to be in partial substitute of the earnings of the applicant who, by reason of his medical disability, showed himself totally unable to provide for his own support.
Viewed against this clear purpose implicit in that portion of the Social Security Act which provided for APTD benefits, the "homemaker" regulation adopted by the Division of Public Welfare is clearly invalid under the Supremacy Clause of the United States Constitution, and cannot serve as the basis of denying petitioner benefits. This regulation rendered ineligible needy persons who were unable to obtain and hold gainful employment because of total and permanent medical disability merely because such persons were shown capable of keeping house for themselves and for one other *227 person. Thus, persons eligible under 42 U.S.C.A. § 1351 were ineligible under the state's "homemaker" regulation in circumstances where the federal legislation provides no authority for their exclusion.
The issue raised in this appeal is not one of first impression. The courts of several of our sister states have stricken similar "homemaker" regulations, adopted to implement their state APTD programs, as violative of the Supremacy Clause of the United States Constitution. Thus, in doing so the court in Zunino v. Carleson, 33 Cal. App.3d 36, 108 Cal. Rptr. 769, 771 (Sup. Ct. 1973) stated:
The term "disabled" and its noun form "disability," in the context of the problem before us have a settled meaning. They connote an inability substantially to engage in any gainful occupation by reason of medically determinable physical or mental impairment. (See Gov. Code, § 31740; Unemp. Ins. Code, § 2626; Alaska Ind. Bd. v. Chugach Assn., 356 U.S. 320, 323-324, 78 S.Ct. 735, 2 L.Ed.2d 795, 17 Alaska 575; Berry v. United States, 312 U.S. 450, 455-456, 61 S.Ct. 637, 85 L.Ed. 945; Culley v. New York Life Ins. Co., 27 Cal.2d 187, 191, 163 P.2d 698; Erreca v. Western States Life Ins. Co., 19 Cal.2d 388, 394, 121 P.2d 689; Clark v. Metropolitan Life Ins. Co., 47 Cal. App.2d 773, 778, 118 P.2d 919; Webster's New Internat. Dict. (3d ed.) "Disability"; Words & Phrases (perm. ed). "Disabled," "Disability.") The same usage is given the words by the Social Security Act. (See 42 U.S.C.A. § 416, subd. (i), (2), § 423, subd. (d), (1), (A); Pierce v. Gardner, 7 Cir., 388 F.2d 846, 847-848, cert. den. 393 U.S. 885, 89 S.Ct. 197, 21 L.Ed. 162; Levine v. Gardner, 2 Cir., 360 F.2d 727, 730; Flemming v. Booker, 283 F.2d 321, 325).
Other courts have reached a similar conclusion with respect to the essential federally mandated purpose of APTD assistance program as providing benefits to those in financial need because of inability to earn due to physical or mental impairment. Those courts which have had occasion to consider "homemaker" regulations substantially similar to the one being challenged in this appeal, have, in a series of unreported decisions, held them invalid under the Supremacy Clause of the United States Constitution. Doffer v. Martin, Civ. No. C-70-919 (N.D. Calif. 1973); Center v. Vowell, A71-CA-118 (W.D. Texas 1973); McLaughlin v. Norton, *228 H158 (Conn. 1973). Research has disclosed no case in which a homemaker regulation has withstood a Supremacy Clause challenge.
Although we find the "homemaking" regulations to be violative of the Supremacy Clause, we do not believe it appropriate to grant any relief to plaintiff at this time. The decision denying her relief was predicated upon her ability to perform household duties for herself and at least one other. The Division made no finding, however, with respect to total disability precluding gainful employment, and without considering the homemaker regulation, although plaintiff specifically requested they make such an alternate finding. We therefore reverse the decision appealed from and remand the matter to the Division for a redetermination of plaintiff's ability to engage in remunerative employment. We do not retain jurisdiction.